STEWART TITLE GUARANTY
COMPANY, Plaintiff/Respondent,

v.

COMMUNITY TITLE COMPANY and
Community Title Company Of St.
Louis, Defendants/Appellants.

No. 68453.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 18, 1996.

Thomas A. Connelly, St. Louis, for appellants.

Michael H. Wetmore, Donald A. Lohman, Husch & Eppenberger, St. Louis, for respondent.

GERALD M. SMITH, Presiding Judge.

Defendants, Community Title Company (CTC) and Community Title Company of St. Louis (CTCSL) appeal from a judgment in a court-tried case awarding plaintiff, Stewart Title Guaranty Co. (Stewart) $209,780.83 plus interest against CTCSL.

Stewart underwrites policies of title insurance. CTC and CTCSL are title insurance agents operating in the St. Louis area. In 1981 Stewart and CTC entered into an agreement whereby Stewart agreed to underwrite title insurance policies that CTC issued on certain real estate properties. James Davis was the sole shareholder of CTC. John Barnes was an officer and director of CTC. The agreement contained a "State Agency Agreement" provision where Stewart appointed Barnes as a state agent, and paid CTC for Barnes' assistance with underwriting questions for Stewart agents in Missouri and Kansas. Referred to by the parties as an "override", the fee for Barnes services was a percentage of premiums re-

ceived by Stewart from title insurance agents other than CTC in the two states.

In 1983 CTCSL was formed by Davis. Fifty percent of the stock was owned by CTC. Davis and Barnes were each officers and directors of CTCSL. By agreement between Stewart and CTCSL Stewart agreed to underwrite title insurance policies that CTCSL issued. Under the original contract CTCSL agreed to pay 35% of the gross fees it received as a premium to Stewart for its underwriting risk. In July 1984, Malcolm Morris, president of Stewart, and Davis on behalf of CTC and CTCSL renegotiated the two agreements. Under the amendments, CTCSL under its contract was to remit to Stewart 40% of the gross premiums on Stewart policies. Under the CTC contract Stewart was to pay overrides to CTC on CTCSL remittances as a State agent at a 20% rate. The contracts contained no cross-default provisions; each contract pertained solely to the parties to it, i.e., CTCSL and Stewart, and CTC and Stewart.

After the amendments were executed CTCSL remitted 35% of gross premiums it received on Stewart policies to Stewart. At trial it contended that an oral agreement for a 35% rate was agreed to by Stewart and Davis shortly after the meeting at which the amendments were signed. Stewart paid CTC the 20% override agreed to in the amendments.

In the summer of 1989 Stewart discovered the discrepancy between the amounts remitted by CTCSL and the amended contract, and demanded that CTCSL pay the difference. CTCSL denied any liability and refused to pay. From September 1989 until May 1990 CTCSL made no remittances to Stewart for Stewart policies it issued and did not furnish Stewart with policy binders reflecting the policies it was issuing. Stewart made no override payments to CTC for any State agent accounts. In June 1990, Stewart notified CTCSL that it would furnish no more blank title insurance policies unless CTCSL prepaid for them.

The parties met in June to resolve the dispute. Prior thereto CTCSL, upon Stewart's demand, provided policy registers for the time period between September 1989 and April 1990. CTCSL also provided a letter from a bank confirming that CTCSL was holding $558,690.63 "for premiums which may be due to Stewart Title Guaranty Company from Community Title."

On June 29, 1990, the parties met. CTCSL agreed to pay Stewart $628,939.24 representing the premiums due at the 35% rate from September through April ($558,-690.63) plus premiums due for May ($70,-248.61). Stewart agreed to again furnish blank title insurance policies to CTCSL. At trial Stewart's evidence was that the agreement was for Stewart to receive from CTCSL the amount admittedly due it. Payment of CTC overrides were to be computed and paid thereafter and later resolution of the other disputes between the parties was intended. At trial CTCSL and CTC maintained that the agreement was intended to be a complete settlement of all previous disputes and included a relinquishment of the overrides owed to CTC. Payment of the agreed figure was made by CTCSL and Stewart furnished CTCSL with blank title insurance policies.

Thereafter Stewart filed suit against CTCSL and CTC to recover the difference between the amended policy remittance rate (40%) and the actual remittance rate (35%). The defendants interposed a defense of accord and satisfaction based upon the June 29 agreement. The trial court found that the money which CTCSL agreed and did pay to Stewart as a result of the June 29 meeting was money indisputably owed to Stewart even under CTCSL's contention of a 35% rate and that therefore Stewart received no consideration for the agreement and no accord and satisfaction occurred. It upheld Stewart's version of the June 29 meeting.

The court found that the 40% rate was the contractually agreed rate and that the underpayment to Stewart was $566,402. It further found that Stewart owed CTC $242,280.58 for overrides for state agents in Missouri and Kansas for the period from September 1989 through June 1990, and $125,787.84 for overrides of 20% of the June 29 agreement payment by CTCSL. It then set-off the amount owed to CTC against the amount owed by

CTCSL and entered judgment against CTCSL for $209,780.83. Defendants challenge on appeal the set-off and the court's denial of CTC's motion for summary judgment on count II of its counterclaim, which motion was filed a month after the court's judgment. That motion sought judgment for the amount of the set-off found by the court in its judgment.[1]

The record now before us is a quagmire. Plaintiff's petition was in six counts. Count I sought recovery from CTC for premiums allegedly due Stewart after August 1990. That count was initially withdrawn from plaintiff's motion for summary judgment on counts I and II. On the day of trial it was dismissed with prejudice. Count II sought recovery from CTCSL for premiums allegedly due Stewart after August 1990. Plaintiff's motion for summary judgment on that count was granted on December 21, 1994. That judgment awarded Stewart $310,531.71 in compensatory damages plus pre-judgment interest of $116,462.97. The court expressly found there was no just reason for delay of the entry or execution of this judgment. The court memo executed on the trial date reflects that on that day, January 9, 1995, within thirty days of the entry of the December 21 judgment, Stewart dismissed Count II with prejudice. The court memo containing the dismissal bears the trial court's signature under the words "So Ordered". The court's findings of fact after trial, dated February 17, 1995, states "Judgment was entered on Counts I and II of Plaintiff's Petition on December 22, 1994 pursuant to Plaintiff's Motion for Partial Summary Judgment".

Count III was for breach of contract against CTC premised upon its failure to remit 40% of premiums after September 1984 to Stewart. Plaintiff dismissed that count at trial with prejudice. Count IV was for breach of contract against CTCSL for its failure to remit 40% of premiums after September 1984 to Stewart. The judgment entered by the trial court against which it granted the set-off was in response to Count IV which did not seek any relief against CTC.

Counts V and VI were respectively for negligence against CTC and CTCSL and for breach of fiduciary duty against CTC, CTCSL, Barnes and Davis. In the court's findings of fact it was stated that they were to be subsequently tried by jury. On the trial date plaintiff was granted leave to file an amended petition to make the allegations of V and VI more definite and certain. The first amended petition containing two counts tracking V and VI was filed February 21. On February 23 plaintiff voluntarily dismissed the first amended petition, apparently disposing of Counts V and VI.

The defendants filed a counterclaim. It is not contained in the record on appeal. The trial court entered judgment in favor of Stewart and against CTCSL on count I of the counterclaim, which count was described as for "declaratory judgment". The trial court dismissed Count II of the counterclaim without prejudice in an amendment to the judgment for the reason the "defendants did not proceed on this Count at trial". The count was described as one for "an accounting". The amendment to the judgment was made May 10, 1995, as part of the order denying CTC's motion for summary judgment, and defendants' motions for new trial and to amend the judgment. CTC's motion for summary judgment filed on March 17, 1995, sought summary judgment on Count II of *its* counterclaim on the basis of the set-off figures included in the court's judgment in favor of Stewart.

■ We are unable to find a basis here for set-off. The only judgment which has been rendered is against CTCSL. The counterclaim of CTC, whatever it may seek, has been dismissed without prejudice. No judgment has been rendered in favor of CTC and against Stewart. The court apparently arrived at some figures which it concluded represented money owed by Stewart to CTC but those figures are not included in any judgment in CTC's favor. The trial court's action in dismissing CTC's counterclaim without prejudice presumably leaves whatever that claim involves in existence.

1. While both CTC and CTCSL appeal, the issues raised on appeal adversely affect only CTC. As to those issues CTCSL is not an aggrieved party. We will treat the appeal as by CTC only.

The record does not indicate any attempt to pierce any corporate veil or to establish that CTC or CTCSL was the alter ego of the other. The corporations were separate and had overlapping but distinct ownership. CTCSL was not a party to the contract between CTC and Stewart by which CTC was entitled to the override fees. CTC was not a party to the contract between CTCSL and Stewart from which the CTCSL obligation to pay premiums to Stewart arose. The override fees to which CTC was presumably entitled (as found by the trial court) were unrelated to the premiums which CTCSL had failed to pay to Stewart. CTC's override fees to which it was presumably entitled arose from premiums which had in fact been received by Stewart and did not arise from the premiums which CTCSL had not paid to Stewart. While Stewart makes a contention in the brief that CTCSL may no longer be in business, there is nothing in the record to support such a contention and nothing to indicate that CTCSL is insolvent or bankrupt.

The doctrine of set-off, whether legal or equitable, is essentially one of equity. *Strong v. Gordon,* 203 Mo.App. 470, 221 S.W. 770 (1920)[3–7]. "It is a general rule of practically universal application at law that, to warrant a set-off, the demands must be mutual and subsisting between the same parties and must be due in the same capacity or right." *Dalton v. Sturdivant Bank,* 230 Mo. App. 800, 76 S.W.2d 425 (1934)[1–3]; *Mitchell v. Bank of Ava,* 333 Mo. 1195, 65 S.W.2d 104 (1933)[2]. This doctrine of mutuality is not permitted to work an injustice, for whenever it is necessary to effect a clear equity or to prevent an irremediable injustice, the set-off will be allowed in equity, even though the debts are not mutual. *Dalton v. Sturdivant Bank, supra.* But there must be some showing of irremediable injustice to invoke an exception to the general rule of mutuality. As indicated in the preceding paragraph there is nothing in this record to support a finding of irremediable injustice, and in the absence of such evidence the trial court was not authorized to set-off the alleged indebtedness of Stewart to CTC against the determined indebtedness of CTCSL to Stewart.

The judgment as entered is reversed and remanded with directions to enter judgment for Stewart for the full amount of the indebtedness found to be due from CTCSL and for such further orders as may be necessary to accurately reflect the judgment finally entered.

GARY M. GAERTNER and RHODES RUSSELL, JJ., concur.