IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 7, 2000 Session

## ROBERT PAUL WILSON, JR. v. MARTHA RUTH WILSON

**Appeal from the General Sessions Court for Blount County**
**No. S-4587      William R. Brewer, Jr., Judge**

### FILED FEBRUARY 26, 2001

### No. E2000-01181-COA-R3-CV

---

In this post-divorce case, the trial court (1) denied the father's request to relocate to Georgia with the parties' minor child; (2) imposed sanctions for the father's perjury; and (3) changed the joint custody decreed at the time of the divorce to sole custody in the mother. On this appeal, the father argues (1) that the trial court erred in reversing its initial post-divorce decision pursuant to which the father had been permitted to relocate to Georgia; (2) that the trial court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act to make a custody determination; (3) that the trial court should have declined to exercise jurisdiction on the ground of inconvenient forum; (4) that the trial court erred in basing its change of custody upon the father's admittedly false testimony; (5) that the trial court's reversal of its prior decision to permit the father to relocate is barred by the doctrine of laches; (6) that the trial court erred in finding that father's contemptuous behavior was a proper basis for denying him an award of child support; and (7) that the trial court abused its discretion when it imposed sanctions for criminal contempt without providing the necessary procedural safeguards. We find that the trial court erred in dismissing Father's petition for child support. In all other respects, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court**
**Vacated in Part; Affirmed in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Michael Hickman, Maryville, Tennessee, for the appellant, Robert Paul Wilson, Jr.

David M. Boyd, Maryville, Tennessee, for the appellee, Martha Ruth Wilson.

## OPINION

I.

Robert Paul Wilson, Jr., ("Father") and Martha Ruth Wilson ("Mother") were divorced by judgment entered April 8, 1997. The parties were awarded joint custody of their minor child, Robert Paul Wilson, III (DOB: September 11, 1991). Father was designated as the primary residential parent, and Mother was granted visitation on her days off from work every other week. In addition, she was awarded four weeks of visitation during the summer and visitation on alternate holidays. The trial court did not order either party to pay child support because it was anticipated that each of the parties would be spending a substantial amount of time with the child and because of "the extreme amount of marital debt and income of the parties." At the time of the divorce, both parties and the child resided in Blount County. The divorce judgment does not contain any provisions expressly prohibiting or otherwise directly affecting the removal of the child from Blount County.

Post-divorce, on August 13, 1997, Mother filed a petition in the trial court, alleging that Father was in contempt of court because of his refusal to permit her to exercise visitation with the child. She also sought a temporary restraining order ("TRO"), alleging that Father had obtained new employment in Georgia and that he intended to move there within ten days. Based upon the petition, Mother obtained an *ex parte* TRO, enjoining Father from removing the parties' child from Blount County pending a hearing.

On August 26, 1997, the trial court heard legal argument on the issue of Father's intended relocation. The hearing was not recorded by a stenographer, and the trial court failed to enter an order memorializing its ruling; however, in a later order, the trial court recounted the events of that first hearing and summarized its findings as follows:

> Following the arguments of counsel [on August 26, 1997], the Court declined to grant the temporary restraining order based on, the then current state of the law, as set out in the *Aaby* [*v. Strange*] case. The Court at that time, without the hearing of proof, found that it appeared the move on the part of [Father] was not solely for vindictive purposes. *The Court did, however, reserve the right to decide the issue upon the hearing of all proof in the matter and further indicated that [Mother] would not be prejudiced because of the Court's declining to grant the restraining order at that hearing.*

(Emphasis added).

On the day of the TRO hearing, Father filed a motion seeking to modify the joint custody arrangement so as to vest him with sole custody of the child. He cited his job transfer to Georgia as the relevant change of circumstances. He also sought an order requiring Mother to pay child support.

In September, 1997, Father and the child moved to Athens, Georgia. Despite the move, Mother continued to exercise visitation with the child every other weekend.

In March, 1998, Mother filed another petition for contempt, alleging that Father had refused to allow her to have contact with the child's caregiver; that he had refused to advise her when the child went out of town or of the identity of the person taking care of him on those occasions; and that he had failed to provide the child with medical and dental treatment.

The final hearing on Mother's August 13, 1997, petition finally took place on January 21, 1999. Before any witnesses were called, the trial court inquired of counsel regarding the issues to be resolved at the hearing. Counsel for the parties appeared to agree that the issues to be litigated included those raised by the two contempt petitions filed by Mother, as well as Father's motion seeking sole custody and an award of child support.[1] The parties disagreed, however, as to whether Father's relocation was still at issue. Mother's counsel argued that the issue was still before the court because, although the court had denied Mother's request for a temporary injunction, it had expressly reserved a final ruling on the injunction issue pending a full evidentiary hearing.[2] Father's counsel disagreed, stating "I believe it was agreed that they did not have any proof that [Father's relocation] was vindictive, so the Court let him go....I thought the matter was over." Father's counsel argued that because the court had already determined that Father could relocate, the January 21, 1999, hearing was concerned solely with "whether [Father is] in contempt for not allowing visitation, whether he should be awarded child support, and nothing else." Without stating whether it considered Father's relocation to still be an issue, the trial court advised Mother to call her first witness and stated, "let's see what we get to."

The testimony presented at trial revealed the following facts. At the time of the divorce, both parties were employed by Home Depot. Shortly after the divorce, Mother remarried. Her new husband was also employed by Home Depot. As a result of this situation, Father testified that he believed his opportunities for advancement within the company locally were limited. He therefore requested a transfer to a Home Depot store in Athens, Georgia. Although his position and salary would remain the same, Father testified that he thought the transfer would provide more opportunities in the future. Furthermore, he testified that the transfer would allow him to be closer to several members of his family who lived within 50 miles of Athens. He denied being motivated by a desire to hinder Mother's visitation.

---

[1] At the hearing, Father's counsel characterized Father's motion as one to "modify and rearrange visitation," not to modify joint custody.

[2] On the issue of relocation, Mother's counsel asked that Father "be ordered to remain here in the State of Tennessee, in Blount County, as the order originally provided...or that [Mother] be awarded the custody of the child." This statement is curious for two reasons. First, the record up to that point does not contain an order requiring Father to remain in Blount County. Second, counsel's statement is the first indication in the record that Mother sought custody of the child.

Father worked at the Athens store for approximately a year until he was discharged for allegedly failing a drug test. Father denied using any drugs. After his termination, he began working for University Ford-Mazda, a car dealership in Athens. Father testified that he was still working at the dealership and earning approximately $30,000 a year.

When Father first moved to Georgia, he and the child resided with the child's paternal grandmother. A few months later, they moved in with the child's paternal grandfather. Father testified that living at the grandfather's home was a good arrangement. He reported that the child was doing very well in school and is "a happy little guy." Father acknowledged that he had refused to reveal to Mother the identity of the child's caregiver or otherwise notify Mother as to when the child was in another person's care. On this point, he testified as follows:

> Q        Why did you refuse to tell her who was caring for the minor child?
>
> A        Well, there was a couple of reasons. One, when she would call, if we were not home, she would call my father, my brothers, my sisters, people that I knew that lived in Atlanta, just anybody that she could think of to try and track me down.
>
> Q        Did those people complain to you about that?
>
> A        Yeah, they did. And the other reason was if we're not home and [the child] is involved in something, I don't think that it's right for her to disrupt that. If she is – if she ever called and we were home, she immediately got to speak to him.

Father testified that he had taken the child to the dentist and that the child had received proper medical attention. Father testified that he had been the child's primary caregiver since the divorce and that, in his opinion, removing the child from him would be detrimental to the child. At the conclusion of his testimony, Father acknowledged that he had failed to pay Mother $6,900 due her under the divorce settlement. He indicated that he wanted the trial court to assess back child support and credit this amount against the $6,900 still due Mother.

Mother testified that she had remarried and had a new baby. At the time, she was earning approximately $38,500 a year. She testified that at the time of the divorce, the parties were spending equal time with the child. She further testified that before Father moved, she had a few problems with visitation; she stated that she currently had no problems with visitation, although she felt that the six-hour round trip necessary to visit with the child is "not right" for her or the child. She testified that she wanted Father to move back to Blount County.

Mother acknowledged that, to her knowledge, the child was doing well in school, although she complained that she had received only one report card from Father. She testified that she did not

know the name of the child's caregiver. As for Father's home, Mother testified that she felt it lacked discipline and that there were too few restrictions on the child.

Mother disputed Father's reasons for moving. She presented the testimony of a fellow Home Depot employee, who testified that Father told the witness that he wanted to move away with the child to get away from Mother and her new husband.

At the conclusion of the proof, the trial court announced that it would take the case under advisement. Before the trial court entered its order, however, in February, 1999, Mother filed a motion for contempt alleging that Father had perjured himself at the January 21, 1999, hearing regarding his income and employment status as of the time of the hearing. Mother argued that the trial court should disallow all of Father's testimony and immediately order the child to be returned to her custody in Tennessee. Father filed a motion to strike Mother's contempt petition. In this motion, Father argued that Mother's contempt petition was barred by the equitable doctrine of laches and that the trial court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act to make a custody determination in this case.

After several months, the trial court entered an order regarding the January 21, 1999, hearing and what it characterized as "the ultimate issue," *i.e.*, whether Father should be allowed to move with the child to Georgia.[3] The court stated that, because of Mother's allegations of perjury, the court was "uncomfortable" and therefore declined to enter an order based upon the testimony presented at that hearing. It ordered another hearing to be scheduled so that evidence could be introduced regarding Mother's allegations.

On September 24, 1999, Mother filed an amendment to her original petition, alleging a material change in circumstances and seeking sole custody of the child. Father objected to Mother's amendment and renewed his argument that the trial court lacked subject matter jurisdiction to make a custody determination.

A hearing was held in November, 1999, on the allegations of perjury. Although no oral testimony was taken, the depositions of both parties were introduced, apparently by agreement, in lieu of their "live" testimony. In his deposition, Father admitted that he had lied about his employment at the January 21, 1999, hearing but stated that he did not feel that his employment was relevant to what was at issue before the court.

In an order entered December 14, 1999, the trial court found that Father's false testimony was material to the issue of whether Father should be allowed to move to Georgia with the child. The

---

[3]It appears from this order that the trial court considered Father's relocation to be the *sole* issue at the January 21, 1999, hearing. In the order, the court states that following the August 26, 1997, hearing on Father's relocation, "[o]ther pleadings for change of custody and contempt were filed...but were not considered by the Court in any ways [sic] that pertain to the issue before the Court today."

court held that it would disregard all of Father's testimony from the January 21, 1999, hearing. It ordered the following:

> That this Court's previous decision allowing [Father] to move the [sic] Georgia with the parties' minor child is reversed.
>
> [Father] is ordered to immediately return to Tennessee with the parties' minor child. Should [Father] not return, the minor child shall be returned and placed in the physical custody of [Mother].
>
> As punishment for his perjury, [Father's] Motion and Request for Child Support is dismissed.
>
> As further punishment for his perjured testimony, [Father's] Motion to Strike is dismissed.
>
> As further punishment for his perjured testimony, [Father] shall be ordered to pay all court costs incurred in this case not yet paid.
>
>                         *        *        *
>
> That counsel for the parties shall schedule, with the Court, [Mother's] Motion for Change of Custody.
>
> As further punishment for his perjured testimony, the Court will also consider [Mother's] request for attorney fees upon [Mother's] attorney filing an affidavit.

On January 20, 2000, Mother filed a petition, demanding that Father return the child to Tennessee and renewing her request for sole custody of the child. Mother alleged that Father had returned to Tennessee to allow her Christmas visitation with the child but had then returned with the child to Georgia. She also filed a petition for contempt, alleging that Father had denied her visitation for the weekend of January 14 and would not allow her to talk with the child by telephone. Following a hearing on January 25, 2000, the trial court found that Father had failed to return to Blount County with the child as ordered by the Court on December 14, 1999. Father was then ordered to return the child within ten days of the hearing. When Father failed to do so, a warrant for custodial interference was issued, Father was arrested, and the child was placed in the custody of Mother. This appeal followed.

## II.

Father argues that the trial court's order reversing its prior decision to permit Father to relocate was against the preponderance of the evidence and was based on an error of law. He

contends that Mother failed to carry her burden under applicable law to successfully prevent Father from relocating with the child. He further argues that the trial court's August, 1997, ruling permitting him to move was a final adjudication and not subject to a collateral attack nearly three years later.

We begin by addressing Father's contention that the trial court's August, 1997, ruling was a final adjudication of the issue of relocation. The record indicates that as a result of the August 26, 1997, hearing, the trial court declined to grant an injunction enjoining Father from relocating. However, the record is clear that the trial court, at that hearing, reserved the right to decide whether to permit Father to relocate with the child upon a full evidentiary hearing, which hearing eventually occurred on January 21, 1999. Clearly, the trial court's initial ruling was not an order fully adjudicating the parties' rights regarding the issue, and therefore, is not a final judgment. *See Hoalcraft v. Smithson,* 19 S.W.3d 822, 827 (Tenn. Ct. App. 1999).

We next turn to the issue of relocation. At the time of the January 21, 1999, hearing,[4] the applicable law on relocation was T.C.A. § 36-6-108, which provides, in pertinent part, as follows:

> (c) If the parents are actually spending substantially equal intervals of time with the child and the relocating parent seeks to move with the child, the other parent may, within thirty (30) days of receipt of notice, file a petition in opposition to removal of the child. No presumption in favor of or against the request to relocate with the child shall arise. The court shall determine whether or not to permit relocation of the child based upon the best interests of the child. The court shall consider all relevant factors including the following where applicable:
> (1) The extent to which visitation rights have been allowed and exercised;
> (2) Whether the primary residential parent, once out of the jurisdiction, is likely to comply with any new visitation arrangement;
> (3) The love, affection and emotional ties existing between the parents and child;
> (4) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

---

[4]When Mother initially filed her petition opposing Father's move, the controlling authority on the issue of relocation was *Aaby v. Strange,* 924 S.W.2d 623 (Tenn. 1996). In *Aaby,* the Supreme Court held that a custodial parent would be permitted to relocate with the child unless the non-custodial parent could show that the custodial parent's motive for relocating was to defeat the non-custodial parent's visitation rights. *Id.* at 629. The *Aaby* court also noted that the non-custodial parent could seek a change of custody based upon a material change of circumstances if removal posed "a specific, serious threat of harm to the child." *Id.* In 1998, the Legislature enacted Chapter 910 of the Public Acts of 1998, which was codified at T.C.A. § 36-6-108. Because this statute is remedial and does not impair any vested rights, it may be retrospectively applied. *Caudill v. Foley,* 21 S.W.3d 203, 208-09 (Tenn. Ct. App. 1999).

(5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(6) The stability of the family unit of the parents;

(7) The mental and physical health of the parents;

(8) The home, school and community record of the child;

(9) The reasonable preference of the child if twelve (12) years of age or older....;

(10) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and

(11) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

(d) If the parents are not actually spending substantially equal intervals of time with the child and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:

(1) The relocation does not have a reasonable purpose;

(2) The relocation would pose a threat of specific and serious harm to the child which outweighs the threat of harm to the child of a change of custody; or

(3) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

T.C.A. § 36-6-108(c) and (d) (Supp. 2000). As can be seen, the statute makes a distinction between parents who spend "substantially equal intervals of time" with a child and those who do not. Mother's testimony reflects that until Father moved to Georgia, the parties were spending "substantially equal intervals of time with the child":

> Q    After the divorce, how were you and your former husband sharing the child, as far as how much time were you spending with the child?
>
> A    When they were still here in Blount County, if I got off early, I would go pick him up at least two to three days a week. Robert would have him, be able to pick him up when he got off early at least two to three days a week.

-8-

Q    So, you were actually sharing about equal time; is that correct?

A    Right, we were both getting to see him, right.

Q    And had that continued up until the time when he moved, ma'am?

A    That had continued, right, up until he moved.

While not disputing the fact that the parties were spending substantially equal intervals of time with the child, Father argues that subsection (d) is the applicable provision in the instant case. We cannot agree. The applicable provision is T.C.A. § 36-6-108(c), which requires application of a best interest analysis in determining whether relocation is appropriate. *See Connell v. Connell,* C/A No. 03A01-9808-CV-00282, 2000 WL 122204, at *3 (Tenn. Ct. App. E.S., filed January 25, 2000).

Upon reviewing the record in this case, we cannot say that the evidence preponderates against a finding that relocation of the child would not be in the child's best interest. While in Georgia, Father and the child have lived first with the child's paternal grandmother and later with his paternal grandfather. Father has been terminated from at least two jobs and is currently self-employed. Mother, on the other hand, has maintained stable employment and earns approximately $38,500 per year. She has remarried and appears to have a stable life situation. Moreover, this Court is concerned by Father's unwillingness, if not outright refusal, to share basic information – such as the child's report cards or the name and phone number of the child's caregiver – with Mother. There is also a clear suggestion in the record that Father recently has shown a propensity to interfere with Mother's visitation and her relationship with the child. Based upon T.C.A. § 36-6-108(c), particularly subsections (1), (2), (5), and (6), we find that the evidence does not preponderate against the trial court's decision refusing Father's request to relocate with the child.

Father argues that the trial court changed custody based solely on his misconduct, *i.e.*, his false statements under oath concerning his employment and income. We disagree with Father's characterization of the trial court's action. Because of his perjured statements, the trial court disregarded his testimony. Undoubtedly, Father's perjury greatly affected his credibility as a witness. *See Wilder v. Wilder,* 863 S.W.2d 707, 713 (Tenn. Ct. App. 1992). We find no error in the trial court's decision to disregard Father's testimony in its entirety due to his perjury. This was within the trial court's prerogative as the trier of fact.

The trial court changed custody in this case because it found that relocation was not in the best interest of the child *and* because Father failed to return to Blount County with the child. The evidence does not preponderate against the trial court's judgment changing custody to Mother.

III.

Father contends that the trial court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act to make a custody determination.

The issue of the trial court's jurisdiction to make a child custody determination in this case is governed by the Tennessee version of the Uniform Child Custody Jurisdiction Act ("UCCJA"), T.C.A. § 36-6-201, *et seq.* (1996) (repealed 1999).[5]  Under the UCCJA, a Tennessee court had jurisdiction to make a child custody determination by initial or modification decree if Tennessee "[i]s the home state of the child at the commencement of the proceeding." T.C.A. § 36-6-203(a)(1)(A) (1996) (repealed 1999).  A child's "home state" was defined as "the state in which the child immediately preceding the time involved lived with such child's parents, a parent or a person acting as parent, for at least six (6) consecutive months...." T.C.A. § 36-6-202(5) (1996) (repealed 1999). The "commencement of the proceeding" and "the time involved" referred to the start of the proceedings regarding the "custody determination."  *See **Brown v. Brown,*** 847 S.W.2d 496, 507 (Tenn. 1993); ***State ex rel. Cooper v. Hamilton,*** 688 S.W.2d 821, 824 (Tenn. 1985).  For the purpose of determining whether the trial court had jurisdiction as the child's home state, the relevant time period is August, 1997, when the proceedings touching upon the child's custodial care began. Without question, Tennessee was the child's home state at that time.  While the final hearing in this case occurred some period of time later, the critical date is the "commencement of the proceeding." That happened in August, 1997, when the trial court's jurisdiction was first invoked on the subject of the child's custodial arrangement.  Accordingly, we find and hold that the trial court had jurisdiction to make a custody determination in this case.

Father argues that even if the trial court had subject matter jurisdiction, the trial court abused its discretion by not declining to exercise jurisdiction on the basis that it is an inconvenient forum. The UCCJA provided that a court properly exercising jurisdiction nevertheless could decline to exercise that jurisdiction upon finding that it was an inconvenient forum and that another state was a more appropriate forum.  *See* T.C.A. § 36-6-208(a) (1996) (repealed 1999).[6]  A finding of inconvenient forum could be made upon the motion of any party or upon the court's own motion. T.C.A. § 36-6-208(b) (1996) (repealed 1999).  In determining whether it was an inconvenient forum, a court had to consider whether it was in the best interest of the child for another state to assume jurisdiction.  T.C.A. § 36-6-208(c) (1996) (repealed 1999).

We do not find an abuse of discretion here.  When these proceedings began, Tennessee was the home state of the child.  The trial court permitted Father to move to Georgia with the child pending a final hearing on the relocation issue.  Mother continued to reside in Tennessee and

---

[5]The UCCJA was replaced by the Uniform Child Custody Jurisdiction and Enforcement Act, effective June 14, 1999.  *See* 1999 Tenn. Pub. Acts ch. 389.  The new act does not apply to actions commenced before that date. *See* T.C.A. § 36-6-243 (Supp. 2000).

[6]In discussing this issue in their briefs, both parties erroneously cite T.C.A. § 36-6-222, which is part of the UCCJEA.  As we have already discussed, the UCCJA, not the UCCJEA, is the controlling law in this case.

-10-

exercise her visitation with the child here. Under the circumstances of this case, the trial court did not abuse its discretion when it proceeded to exercise the jurisdiction that it clearly had. Father's argument to the contrary is without merit.

IV.

Father contends that the equitable doctrine of laches bars Mother from contesting his relocation with the child to Georgia.

"The two essential elements of laches are negligence and unexcused delay of the complainant in asserting his alleged claim...." *Consumer Credit Union v. Hite,* 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990). Laches is applicable only "where the party invoking it has been prejudiced by the delay." *Archer v. Archer,* 907 S.W.2d 412, 416 (Tenn. Ct. App. 1995). We do not find that the doctrine of laches is applicable here. Mother was not tardy in asserting her opposition to Father's move; she filed her petition in opposition in August, 1997, *before* Father had left Tennessee. Moreover, we do not find that the delay between the filing of her petition and the final hearing can be attributed to any negligence on Mother's part. Even if the delay could be attributed to Mother – a conclusion that is not supported by this record – Father has not demonstrated how he has been prejudiced by the delay. Having found no unexcusable delay and no prejudice to Father, we find this argument to be without merit.

V.

Father's last two issues involve the "punishment" that the trial court imposed upon Father for his perjury. First, Father argues that the trial's order "denying Father child support as punishment for contempt (false testimony) was inequitable and an abuse of discretion." Second, he argues that the trial court abused its discretion "by imposing sanction for criminal contempt on Father without providing necessary procedural safeguards."

Father's characterization of the trial court's actions as being based upon a finding of contempt is in error. In its December 14, 1999, order, the trial court did not find Father in contempt, criminal or otherwise; rather, it imposed sanctions – namely, the dismissal of his motion for child support and motion to strike, and the imposition of court costs and attorney's fees – upon Father for his perjury. Perjury "offends the basic principles underlying our judicial system." *Wilder,* 863 S.W.2d at 713. It is conduct that courts cannot, and should not, condone. *See id.* In light of the circumstances of this case, we do not find that it was inappropriate for the trial court to impose court costs and attorney's fees upon Father and to dismiss his motion to strike in order to sanction him for his misconduct. We do find, however, that the trial court's dismissal of his motion requesting child support was not an appropriate sanction. Just as custody decisions should not be made to punish a parent, *see Wall v. Wall,* 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995), child support should not be denied to punish a parent for his or her misconduct. Although typically paid to a custodial parent, child support payments are clearly intended for the benefit of the child. *Rutledge v. Barrett,* 802 S.W.2d 604, 607 (Tenn. 1991). Accordingly, we vacate that portion of the trial court's judgment.

We remand this case for a determination, in accordance with the Child Support Guidelines, of the amount of child support to which Father, as the primary residential parent, was entitled from the time of the filing of his motion in August, 1997, until custody was awarded to Mother in December, 1999.

VI.

The judgment of the trial court dismissing Father's motion requesting child support is vacated. In all other respects, the judgment of the trial court is affirmed. Costs on appeal are taxed equally between the parties. This case is remanded for collection of costs assessed below and for further proceedings consistent with this opinion, all pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE

-12-