IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

# CLAUDE WILLIS v. LOLA MAE WRIGHT WILLIS

**Direct Appeal from the Chancery Court for Benton County
No. 9399   Ron E. Harmon, Chancellor**

---

**No. W1999-01537-COA-R3-CV - Decided May 3, 2000**

---

This appeal arises from a dispute between Plaintiff Claude Willis and Defendant Lola Mae (Wright) Willis regarding the terms of their divorce. The trial court granted an absolute divorce to Ms. Wright,[1] divided the parties' marital property, allocated the parties' marital debt, and awarded Ms. Wright alimony *in solido*, alimony *in futuro*, and attorney's fees. On appeal, Mr. Willis argues that the trial court's division of marital property and allocation of marital debt are inequitable, and that, assuming an award of alimony is appropriate in the case at bar, the court should have awarded Ms. Wright rehabilitative alimony rather than alimony *in futuro*. Additionally, Ms. Wright requests on appeal that her award of attorney's fees be designated as alimony. We affirm the ruling of the trial court; however, we modify the court's ruling to reflect that attorney's fees are awarded to Ms. Wright as alimony.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified; and Remanded**

FARMER, J., delivered the opinion of the court, in which HIGHERS and LILLARD, JJ., joined.

C. Timothy Crocker, Milan, Tennessee, for the appellant, Claude Willis.

Marsha W. Johns, Huntingdon, Tennessee, for the appellee, Lola Mae Wright Willis.

## OPINION

The parties married in July of 1977 and separated in August or September of 1997. After their separation, the parties attempted to reconcile, but these attempts were ultimately unsuccessful. Throughout their marriage, the parties experienced financial difficulties that caused stress and strain in their relationship. The parties also experienced a great deal of conflict regarding Mr. Willis' relationship with Susan Kelley, one of Mr. Willis' neighbors. Ms. Wright once found Ms. Kelley's telephone number written on a piece of paper in Mr. Willis' truck. Additionally, when removing

---

[1]Pursuant to the final decree, Defendant's name was restored to her former name of Lola Mae Wright.

some furniture from the parties' home, Ms. Wright found a greeting card signed by Ms. Kelley that had lip prints on it. Finally, Ms. Wright once observed Mr. Willis entering Ms. Kelley's home without first knocking on the door. At trial, Mr. Willis recited Ms. Kelley's telephone number by memory and admitted that he had called her on several occasions. Mr. Willis repeatedly maintained, however, that he has never been unfaithful to Ms. Wright and that his relationship with Ms. Kelley is only a friendship.

In November of 1997, Mr. Willis filed a complaint for divorce alleging that Ms. Wright had engaged in inappropriate marital conduct and that there were irreconcilable differences between the parties. Ms. Wright then filed an answer and counter-complaint for divorce admitting that irreconcilable differences had arisen between the parties, denying Mr. Willis' allegation of inappropriate marital conduct, and alleging that Mr. Willis had engaged in both cruel and inhuman treatment and inappropriate marital conduct. After a hearing on the matter, the trial court granted an absolute divorce to Ms. Wright on the ground of inappropriate marital conduct, divided the parties' marital property, allocated the parties' marital debt, awarded Ms. Wright alimony *in solido* in the amount of $2,412.00, alimony *in futuro* in the amount of $700.00 per month, and attorney's fees in the amount of $4,356.25. Mr. Willis filed a motion to alter or amend the final decree and for a new trial, which was denied by the trial court. This appeal by Mr. Willis followed.

The issues raised by the parties on appeal, as we perceive them, are as follows:

I.     Did the trial court inequitably divide the parties' marital property?
II.    Did the trial court inequitably allocate the parties' marital debt?
III.   Did the trial court err in awarding alimony to Ms. Wright and further err in awarding Ms. Wright alimony *in futuro* rather than rehabilitative alimony?
IV.    Did the trial court err in refusing to designate that the amount awarded to Ms. Wright for her attorney's fees is awarded as alimony?

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* T.R.A.P. 13(d). Accordingly, we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); T.R.A.P. 13(d). With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

### *Marital Property*

In the case at bar, the trial court divided the parties' marital property as follows:

| Marital Property | Value | Party to Whom Property Awarded | Value Received By Mr. Willis | Value Received By Ms. Wright |
| --- | --- | --- | --- | --- |

| | | | | |
|---|---|---|---|---|
| Marital Residence | $12,000.00 equity | proceeds from sale divided equally | $6,000.00 | $6,000.00 |
| Tanning Bed | $1,500.00 | proceeds from sale divided equally | $750.00 | $750.00 |
| Cattle Equipment | $1,250.00 | proceeds from sale divided equally | $625.00 | $625.00 |
| Backhoe | $2,000.00 | proceeds from sale divided equally | $1,000.00 | $1,000.00 |
| 1998 Ford Ranger | $0.00 (being leased) | Mr. Willis | $0.00 | $0.00 |
| 1988 Buick Century | $3,000.00 | Ms. Wright | $0.00 | $3,000.00 |
| Tractor and Equipment | $2,600.00 | proceeds from sale divided equally (Ms. Wright's ½ of proceeds awarded as alimony *in solido*) | $1,300.00 | $1,300.00 |
| Cows | $2,224.00 | proceeds from sale divided equally (Ms. Wright's ½ of proceeds awarded as alimony *in solido*) | $1,112.00 | $1,112.00 |
| 4-Wheeler | $2,500.00 | Mr. Willis | $2,500.00 | $0.00 |
| Trencher | $1,500.00 | Mr. Willis | $1,500.00 | $0.00 |
| Troybilt Riding Mower | $2,500.00 | Ms. Wright (if found in Mr. Willis' possession or hidden by Mr. Willis) | $0.00 | $2,500.00 |
| Household Furnishings / Personal Property | $10,183.00 | both parties retain the items currently in their possession | $5,089.00 | $5,094.00 |
| Missing Household Furnishings / Personal Property | $5,795.00 | proceeds from sale divided equally (if any or all of items are found) | $0.00 | $0.00 |
| Mr. Willis' Retirement Accounts | $6,050.00 | ½ to Mr. Willis ½ to Ms. Wright | $3,025.00 | $3,025.00 |

**Total Value of Marital Property Awarded to Mr. Willis: $22,901.00**
**Total Value of Marital Property Awarded to Ms. Wright: $24,406.00**

When dividing marital property upon divorce, the trial court must consider all relevant factors, including those set forth in section 36-4-121 of the Tennessee Code Annotated.[2] *See* Tenn. Code Ann. § 36-4-121(c) (1996). These factors are as follows:

>    (1) The duration of the marriage;
>    (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>    (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>    (4) The relative ability of each party for future acquisitions of capital assets and income;
>    (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
>    (6) The value of the separate property of each party;
>    (7) The estate of each party at the time of the marriage;
>    (8) The economic circumstances of each party at the time the division of property is to become effective;
>    (9) The tax consequences to each party; and
>    (10) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (1996). Although the trial court's distribution of the parties' marital property must be equitable, the court is not required to divide the parties' marital property equally. *See Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997); *Bookout v. Bookout*, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997). The equity or inequity of a court's distribution of marital property is determined by examining the final result of the court's ruling rather than the division of any particular piece or category of marital property. *See Watters*, 959 S.W.2d at 591; *Bookout*, 954 S.W.2d at 732; *Wade v. Wade*, 897 S.W.2d 702, 717 (Tenn. Ct. App. 1994); *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). Additionally, we note that trial courts are afforded a great deal of discretion when dividing marital property. *See Fisher*, 648 S.W.2d at 246; *Bookout*, 954 S.W.2d at 732; *Wade*, 897 S.W.2d at 715; *Koch v. Koch*, 874 S.W.2d 571, 579 (Tenn. Ct. App. 1993); *Loyd v. Loyd*, 860

---

[2]This statute specifically provides, however, that the relative fault of the parties is not among the factors that the court may consider when making an equitable division of the parties' marital property. *See* Tenn. Code Ann. § 36-4-121(a)(1) (1996). *See also Fisher v. Fisher*, 648 S.W.2d 244, 246-47 (Tenn. 1983); *Wilder v. Wilder*, 863 S.W.2d 707, 715 (Tenn. Ct. App. 1992).

S.W.2d 409, 411 (Tenn. Ct. App. 1993). Consistent with this general principle, the distribution of marital property made by the trial court in the instant case is entitled to a presumption of correctness and may not be reversed unless it is contrary to the preponderance of the evidence. *See, e.g., Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997)(citing *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993)); T.R.A.P. 13(d).

Upon consideration of the factors set forth in section 36-4-121(c) that are applicable to the case at bar, we think that the final result of the trial court's division of the parties' marital property is equitable. The parties were married for twenty years. At the time of their divorce hearing, Mr. Willis was fifty-six years of age and Ms. Wright was forty-eight years of age. Mr. Willis testified that neither he nor Ms. Wright have any physical or mental disabilities that would prevent either of them from earning a living. Ms. Wright testified, however, that her hand is fifty percent disabled as the result of a condition known as carpal tunnel syndrome. Mr. Willis is a high school graduate, has been employed for the last twenty-eight years as a maintenance mechanic by Inland Container, and earns a gross income of approximately $57,0000.00 per year. Ms. Wright is also a high school graduate and has worked for various employers throughout the parties' marriage. At the time of trial, Ms. Wright was employed by H.I.S. and earned a gross income of $983.60 per month (or $11,803.20 per year). In statements submitted to the trial court, Mr. Willis indicated that his living expenses are $3,352.09 per month while Ms. Wright indicated that her living expenses are between $1,797.67 and $2,373.00 per month. Given the parties' skills, training, work histories, present salaries, and Ms. Wright's physical disability, it is clear that Mr. Willis has a greater ability than Ms. Wright to acquire assets and earn income in the future. In light of the income disparity between the parties, we think that the potential for economic hardship following the parties' divorce is much greater for Ms. Wright than for Mr. Willis. The trial court divided the parties' marital property nearly equally, as Mr. Willis was awarded property having a value of $22,901.00 and Ms. Wright was awarded property having a value of $24,406.00. Under the circumstances of the case at bar, we think that this result is equitable. We therefore affirm the trial court's division of the parties' marital property.

### *Marital Debt*

In addition to dividing the parties' marital property, the trial court also apportioned the parties' marital debt, as follows:

| Marital Debt | Amount of Debt[3] | Amount of Debt Allocated to Mr. Willis | Amount of Debt Allocated to Ms. Wright |
| --- | --- | --- | --- |

---

[3]The trial court failed to make findings of fact regarding the amounts of the marital debts incurred by the parties. For purposes of this appeal, we assume that the amounts stated by Mr. Willis are correct.

| | | | |
|---|---|---|---|
| VISA (Bank Card Center) | $5,083.12 | $5,083.12 | $0.00 |
| Fingerhut | $603.52 | $603.52 | $0.00 |
| TVA Credit Union | $4,000.00 | $4,000.00 | $0.00 |
| TransSouth | $2,921.58 | $2,921.58 | $0.00 |
| VISA (MBNA) | $980.00 | $0.00 | $980.00 |
| Sears | $1,118.18 | $0.00 | $1,118.18 |

**Total Value of Debt Allocated to Mr. Willis: $12,608.22**
**Total Value of Debt Allocated to Ms. Wright: $2,098.18**

Trial courts have the authority to apportion marital debts in the same way they divide marital assets. *See Cutsinger v. Cutsinger*, 917 S.W.2d 238, 243 (Tenn. Ct. App. 1995)(citing *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 623-24 (Tenn. Ct. App. 1989)). When apportioning marital debt, a court must consider (1) which party incurred the debt and the reason for the debt, (2) which party received the benefits of the debt, and (3) which party is better able to assume the debt. *See Dellinger*, 958 S.W.2d at 782; *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996); *Hougland v. Hougland*, 844 S.W.2d 619, 624 (Tenn. Ct. App. 1992); *Mahaffey*, 775 S.W.2d at 624; *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989). When practicable, marital debts should be divided so that they follow the marital property with which they are associated. *See Mondelli*, 780 S.W.2d at 773. The court is not required, however, to divided the parties' marital debts in the same proportion as their marital assets. *See id.*

In the case at bar, the parties' marital debts were incurred by both Mr. Willis and Ms. Wright and both Mr. Willis and Ms. Wright received the benefits of the debts. In light of the parties' present incomes and Mr. Willis' greater ability to earn future income, however, we think that Mr. Willis is in a better position than Ms. Wright to assume these debts. Additionally, Mr. Willis agreed at trial to assume the VISA, TVA Credit Union, and TranSouth debts following the parties' divorce. Under these circumstances, we conclude that it was not inequitable to allocate $12,608.22 of the parties' marital debt to Mr. Willis while allocating only $2,098.18 of this debt to Ms. Wright. Thus, we affirm the trial court's allocation of the parties' marital debt.

### *Alimony*

The trial court ordered Mr. Willis to pay $2,412.00[4] to Ms. Wright as alimony *in solido*. Additionally, the court ordered Mr. Willis to pay alimony *in futuro* to Ms. Wright in the amount of $700.00 per month. On appeal, Mr. Willis argues that the trial court erred in awarding alimony to

---

[4]This amount is equal to one-half of the proceeds that Mr. Willis received from the sale of a tractor, some equipment, and some cows owned by the parties.

Ms. Wright. Assuming, however, that an award of alimony is appropriate under the facts of the case at bar, Mr. Willis argues that the court should have awarded Ms. Wright rehabilitative alimony rather than alimony *in futuro*.

Trial courts have broad discretion to determine whether alimony is appropriate and, if so, the nature, amount, and duration of the alimony awarded. *See Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998)(citing *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989)). There are no hard and fast rules to be applied in cases involving a request for alimony. *See id.* (citing *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); *Stone v. Stone*, 409 S.W.2d 388, 392-93 (Tenn. Ct. App. 1966)). Rather, decisions regarding alimony hinge on the unique facts of the case and involve the careful consideration and balancing of many factors, including those set forth in section 36-5-101(d)(1). *See id.* at 683 (citing *Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd*, 860 S.W.2d at 412). These factors are as follows:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (G) The separate assets of each party, both real and personal, tangible and intangible;
> (H) The provisions made with regard to the marital property as defined in § 36-4-121;
> (I) The standard of living of the parties established during the marriage;
> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
> (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1999). The most important factors that a court must

consider when determining whether to award alimony are (1) the need of the spouse seeking support and (2) the ability of the other spouse to pay support. ***See Young v. Young***, 971 S.W.2d 386, 391 (Tenn. Ct. App. 1997); ***Watters***, 959 S.W.2d at 593; ***Smith v. Smith***, 912 S.W.2d 155, 159 (Tenn. Ct. App. 1995).

As stated above, Mr. Willis earns a gross income of approximately $57,000.00 per year while Ms. Wright earns a gross income of only $983.60 per month (or $11,803.20 per year). Additionally, Mr. Willis' living expenses are $3,352.09 per month while Ms. Wright's living expenses are between $1,797.67 and $2,373.00 per month. Both Mr. Willis and Ms. Wright are high school graduates. Additionally, however, Mr. Willis has received training in the field of maintenance mechanics. Ms. Wright had an opportunity to participate in a two year retraining program offered by her former employer, but she declined the opportunity because she had just had surgery on her hand and was helping care for her grandchildren. The parties were married for twenty years. At the time of trial, Mr. Willis was fifty-six years of age and Ms. Wright was forty-eight years of age. Although Mr. Willis testified that neither of the parties were mentally disabled, Ms. Wright indicated that she takes prescription medication to calm her nerves. Additionally, Ms. Wright testified that her hand is fifty percent disabled as a result of carpel tunnel syndrome, which causes her hand to become stiff and numb. There is no evidence in the record indicating that either of the parties have assets of significant value other than those items of marital property that were divided by the trial court. As noted above, the trial court divided the parties' marital property nearly equally. In granting an absolute divorce to Ms. Wright, the trial court found that Mr. Willis was guilty of inappropriate marital conduct. Although the court did not articulate the specific conduct that it considered to be inappropriate, Ms. Wright presented ample evidence upon which the court could have found that, during the parties' marriage, Mr. Willis was involved in a romantic relationship with Ms. Kelley.

After consideration of the factors discussed above, we conclude that this is an appropriate case in which to award alimony. Given Ms. Wright's current level of income and limited earning capacity, we think that she is in need of spousal support. Mr. Willis earns approximately $57,000.00 per year and thus is capable of providing this support. Although the need of Ms. Wright and ability of Mr. Willis to pay are our primary considerations, we are also mindful of the trial court's finding of marital fault on the part of Mr. Willis. Mr. Willis argues on appeal that Ms. Wright is capable of rehabilitation and that, accordingly, any support awarded to her should be in the form of rehabilitative alimony rather than alimony ***in futuro***. In Tennessee, there is a statutory preference for temporary, rehabilitative alimony when an economically disadvantaged spouse is in need of support. ***See*** Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1999). The purpose of rehabilitative alimony is to enable an economically disadvantaged spouse to become more self-sufficient by acquiring additional job skills, education, or training. ***See Anderton***, 988 S.W.2d at 682 (citing ***Smith***, 912 S.W.2d at 160 ; ***Cranford v. Cranford***, 772 S.W.2d 48, 51 (Tenn. Ct. App. 1989)). As stated above, Ms. Wright has only a high school education. At the time of trial, she was forty-eight years of age. She also suffers from a fifty percent disability to her hand, which limits her ability to perform certain tasks. Under these circumstances, we believe that rehabilitation on the part of Ms. Wright is infeasible and that, consequently, the trial court was correct in awarding Ms. Wright alimony ***in futuro*** rather than rehabilitative alimony. Accordingly, we affirm the ruling of the trial court with respect to the matter of alimony.

### *Attorney's Fees*

The trial court awarded attorney's fees to Ms. Wright in the amount of $4,356.25. At the time of the trial court's ruling, counsel for Ms. Wright specifically requested that the court designate the award as alimony but the court refused to do so. When determining whether to award attorney's fees in a case of divorce, the court must consider the factors set forth in section 36-5-101(d)(1), which are the same factors applicable to requests for alimony. *See Lindsey v. Lindsey*, 976 S.W.2d 175, 181 (Tenn. Ct. App. 1997); *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995); *Hougland*, 844 S.W.2d at 623; *Storey v. Storey*, 835 S.W.2d 593, 598 (Tenn. Ct. App. 1992); Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1999). This Court has previously recognized that an award of attorney's fees in a divorce case is, in essence, and award of alimony. *See Sannella v. Sannella*, 993 S.W.2d 73, 77 (Tenn. Ct. App. 1999); *Smith*, 912 S.W.2d at 161; *Kincaid*, 912 S.W.2d at 144; *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988); *Duncan v. Duncan*, 652 S.W.2d 913, 915 (Tenn. Ct. App. 1983); *Ligon v. Ligon*, 556 S.W.2d 763, 768 (Tenn. Ct. App. 1977). We therefore conclude that, upon the request of counsel for Ms. Wright, the trial court should have designated that the amount awarded to Ms. Wright for her attorney's fees was awarded as alimony. Consequently, we modify the ruling to the trial court to reflect that the award of attorney's fees is alimony.

### *Conclusion*

Based on the foregoing, the ruling of the trial court is modified to reflect that the award of attorney's fees awarded to Ms. Wright is alimony. The judgment of the trial court is otherwise affirmed. Costs on appeal are assessed against Mr. Willis, for which execution may issue if necessary.