Peck, J.
The act of 1794, ch. 4, sec. 71, allows peremptory challenges to the number of thirty-five jurors, *423 in cases capital. The act of 1803, ch. 1, sec. 5, provides, that m civil cases, either plaintiff or defendant may challenge two jurors, without cause shown; and by the same section it is provided, that in cases of petit larceny, both the State and party charged may, in like manner, challenge four jurors. By the act of 1803, ch. 17, on a charge for counterfeiting, &c. which offence is not by it declared to be a felony, a challenge of five jurors is allowed the prisoner. By the act of 1811, against forging or stealing deeds, the prisoner is allowed a challenge of twenty jurors. On an indictment for usury, by the act of 1819, ch. 22, sec. 4, a challenge of four jurors is allowed. By the act of 1811, against the crime of counterfeiting, or passing counterfeit bank paper, the punishment of which is whipping, fine, &c. the prisoner may challenge twenty jurors. In the act of 1813, ch. 65, on the subject of offences against the paper credit, the most penal law in our code, inflicting the punishment of death for at least five of the offences, whipping with a cowskin, fine, imprisonment, &c. for others, challenges'are not so much as mentioned.- The act of 1807, ch. 72, describes the offences of horse stealing, larceny of goods, forgery, perjury, malicious conspiracy, arson, harboring felons, receiving stolen goods, breaking jails, and maiming, disfiguring, or stabbing. For three of these offences, to wit, horse stealing, perjury, and arson, the punishment on a second conviction is death; yet the act is silent on the subject of challenges. In 1803, ch. 9, against malicious mischief, the act is silent as to challenges. In the act of 1801, against vagrancy, unlawfully wearing arms, keeping gaming tables, &c. no right of challenge is provided for.
It would be an useless labor to travel through all our acts, with a view to distinguish where the right of challenge is allowed by the express letter, and where the act remains silent. One thing cannot but appear striking to the lawyer in viewing them, and that is, the glaring irregularity of this provision in favor of the accused. In *424 many nono!' offences, the right is secured, but in many newly created offences the acts are silent. In some, the punishment is most exemplary; amongst which may be named the act of 1813, concerning the making and passing of spurious bank paper. That act scarcely uses the term felony, yet “death without the benefit of clergy” is thrown in as a kind of “dying fall” at the close of about half the sections. Some of these are offences created by the act, and seveal of them follow the act of 1811; which act, allowing challenges, might as to the same or a like offence, be taken in pari materia with the subsequent act, and authorize the challenge to the number of twenty. Passing from the act of 1813, and considering of others silent as to the privilege of challenge, no definite rule can be fixed.
I should, for myself, be far from saying that there is any case of indictment where the prisoner or accused should be denied the right of challenge to some extent. Surely the State would concede to a person charged with a crime at least as great a latitude as would be allowed in a civil case; and in all such, no matter how small the matter in controversy, a challenge, without cause assigned, extends to two on either side. The State, in some minor offences, has reserved the right to challenge four jurors; and what reflecting judge, viewing all these provisions in connection, would deny to the accused a privilege which the law has extended to the State. If it be held as a reproach to British jurisprudence, that when a Sidney or a Raleigh was tried, the accused was denied the aid of counsel, which was allowed to the crown, would not we be receding from the better light by which we are surrounded, to deny to a prisoner a privilege fully as important to him as that of having counsel assigned?
Whatever is merciful in its effects, if known to the law and practice of the courts, is to be allowed. This is clearly illustrated in the doctrine concerning the allowance of clergy. Hawk. P. C. Verb. Clergy. So what *425 ever is doubtful, weighs for an accused; and indeed the question before the court ought rather to be, whether the right of challenge has been taken away by the statute, than whether we have any statute which allows it. For it may most emphatically be said, that perjury is a felony, by the statute, since for the second offence, it is punished with death; and by the ant of 1807, ch. 72, sec. 8, one species of perjury is thus punished for the first offence. The falsely convicting an innocent person, on a charge of a capital crime, is this species. Without perjury, the offence cannot be perpetrated; and if perpetrated and death ensue, the offender is punishable with death.
Immediately after framing our constitution, those clauses intended to secure the right of trial by an impartial jury, were closely adhered to. The case of the State vs. Hum-phreys, (1 Ten. Rep.) which for a long time was followed, proves it; so the early statutes do not lose sight of this important object. But time, which mines at the base of all things, seems to be making some impression on the constitution. The more recent legislation does not seem to have watched with the same care as formerly, to secure the privilege of trial by jury as before understood; therefore, recent acts are found the most silent in securing the right of challenge. For this cause, if for no other, the courts ought not to be forgétful of the bill of rights. Disregarding that, and following expedience where the law is silent, justice will become so summary, that though we may preserve the form, we shall lose the substance.
But I will directly meet the point; is perjury a felony at common law? And first, what is felony? If we test it by the English rule, “that crime which works a forfeiture,” in this country, where forfeitures are done away, we should be at a loss for a definition. But we are informed by the books, that at common law perjury was punished with death, afterwards loss of the tongue, for *426 feiture of goods, becoming infamous, and the like. 4 B. C. 137. So that perjury, in England, once was felony; and being such, though subsequent legislation has lessened the punishment without taking away the right of challenge, can it be pretended that the right does not exist? The principle which carries itself through a long train of decisions in the circuit courts, that where for the second offence the punishment is death, the challenges shall be allowed, being merciful in its nature, ought to be cherished. It is supplying a casus omissus by the legislature, and certainly no good reason can be urged for a change; especially if we consider the situation of a prisoner in a small county, where clamour sometimes has condemned him before he comes to the bar.
Under the old superior court system, the means used in procuring jurors void of prejudice, had many advantages over our present system, and yet under that superior system for selecting jurors, Humphreys’ case was decided. I cannot, in my view of the subject before me, venture on a change. Being, therefore, of opinion that the court erred, let the judgment be reversed, and the cause be remanded for a new trial to be had therein.
Catron, J. concurred.
Whyte, J. dissented.
J udgment reversed.