STATE of Tennessee, Appellee,

v.

**Jessie J. PERRY and Alethea C. Perry, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 15, 1994.

Permission to Appeal Denied by Supreme Court June 20, 1994.

Charles W. Burson, Atty. Gen. & Reporter, John B. Nisbet, III, Asst. Atty. Gen., Nashville, Lawrence Ray Whitley, Dist. Atty. Gen., Marsha Selecman, Asst. Dist. Atty. Gen., Gallatin, for appellee.

Gary M. Williams, Hendersonville, for appellants.

1. In the future, the procedure outlined in the recent case of *State v. Jeremy A. Winsett*, 882 S.W.2d 806 (Tenn.Crim.App.1993), should be followed in pretrial diversion cases. The failure to follow such a procedure in this case resulted in the loss of precious time to an already overtaxed judicial system.

## OPINION

JONES, Judge.

This Court granted the appellants' Rule 10 interlocutory appeal to determine the correctness of the trial court's finding that the district attorney general did not abuse his discretion in refusing to place the appellants on pretrial diversion. The appellants contend that they qualify for pretrial diversion; and the trial court should have ordered the district attorney general to grant them pretrial diversion relief. The state argues that the trial court properly upheld the district attorney general's refusal to grant the appellants this relief.

The judgment of the trial court is affirmed for the reasons set forth in this decision.

## PRIOR PROCEEDINGS

The Sumner County Grand Jury returned a two count presentment. One count of the presentment charged Jessie J. Perry with the offense of aggravated perjury. The second count of the indictment charged Alethea C. Perry with aggravated perjury. Subsequently, defense counsel formally requested the district attorney general to divert the appellants pursuant to Tenn.Code Ann. §§ 40–15–101–105.[1] The district attorney general denied the application. An assistant district attorney general sent the following facsimile to defense counsel after defense counsel made several inquiries regarding the district attorney general's decision:

> Thank you for your transmission. Gen. Whitley and I have discussed your request for pre-trial diversion and must respectfully deny same. If you have any questions, please let me know. We can resolve this case on a plea as charged with a 2 year sentence (the minimum) and a sentencing hearing.

The appellants filed a petition for a writ of certiorari, asking the trial court to review the decision of the district attorney general de-

nying their respective applications for pretrial diversion. The trial court reviewed the petition, discovered the facsimile that was attached, and entered an order directing the district attorney general to furnish defense counsel with "the reasons for denying the request of pre-trial diversion." The assistant district attorney general forwarded a letter to defense counsel. The last paragraph of the letter summarizes the reasons for the denial of the applications: "[W]e feel the nature and the circumstances of the offense demonstrate outrageous conduct, that deterrents [sic] of this crime is necessary, and that we simply cannot take the word of Alethea and Jessie Perry alone to conclude that they would be·good candidates for pre-trial diversion."

## NATURE OF APPELLATE REVIEW

■ When a defendant appeals from an interlocutory order of a trial court affirming the decision of the district attorney general not to divert the defendant, the findings of fact made by the trial court are binding upon this Court, *State v. Helms,* 720 S.W.2d 474, 476 (Tenn.Crim.App.1986); *State v. Watkins,* 607 S.W.2d 486, 488 (Tenn.Crim.App.1980); and this Court cannot reverse the judgment of the trial court unless the evidence contained in the record preponderates against these findings. *Helms, supra; Watkins, supra.*

Since there was a full hearing on the merits of the appellants' applications, this Court must review the evidence and documents adduced at the hearing to determine whether the facts contained in the record support or preponderate against the findings of fact made by the trial court in denying the·petition for a writ of certiorari.

## THE EVIDENTIARY HEARING

In March of 1990, the appellants purchased a home from Mr. and Mrs. Anthony Escue. Part of the consideration was a $5,000 unsecured note that represented the Escues' equity in the home. The appellants defaulted on the obligation. The Escues filed suit in the General Sessions Court of Sumner County on March 9, 1992. The appellants filed a sworn denial on March 19, 1992. The trial on the merits was held on March 26, 1992.

The Escues testified about the real estate transaction, the preparation of the note, the signing of the by the appellants, and that the note was in default because the appellants had not made the payments as agreed. Only three payments were made. The appellants testified in support of their defense, both denying that they had executed the note. Alethea C. Perry testified that she had not seen the note prior to the date the case was tried; and she denied signing the note. Jessie J. Perry testified that the signature appearing on the note was not his signature. When the General Sessions judge asked Mrs. Perry about the three payments, she testified that the payments were for something else—not payments on the note. The General Sessions judge, realizing that either the Escues or the appellants had committed perjury, gave the parties several chances to tell the truth about the note. The appellants continued to deny that they executed the note. The General Sessions judge subsequently took the case under advisement and asked the Sumner County Sheriff's Department to investigate the matter.

The General Sessions judge testified that there had been four recent cases where individuals had admitted that they committed perjury either in the execution of a warrant or giving testimony in open court. The judge stated that the problem "is serious, and it is on the increase, and there's just no question about it."

Jessie J. Perry was thirty-two years of age when he testified at the hearing. His education extends through the eighth grade. He was married to Alethea C. Perry. Three children had been born to this union. The children's ages were thirteen, ten and eight. He had maintained employment through the years and was employed by a Nashville-based company as a machinist and die maker. He was also a member of a local church and attended services there.

Initially, he denied the amount in controversy because he discovered several problems with the house after moving into it. When his wife denied executing the note, he decided to echo her testimony. His reason

for denying the execution of the note: "I was so nervous and stuff just out of the blue I said no." At another point in his testimony he stated that he "was just so nervous and stuff my head was spinning. I was so nervous, like I am now."

Alethea C. Perry has a high school education and has worked as a lay practical nurse for several years at a local hospital. When asked if she had perjured herself, she replied: "Yes sir, I did tell the Court on impulse that I had not seen the note nor had I signed it."

Neither of the appellants has ever been convicted of a criminal offense in the past.

Both testified that they discussed the matter after leaving the courtroom. It was agreed that they would call and apologize to the General Sessions judge for what they had done. Mr. Perry testified: "I wanted to make it right." They testified that the judge's secretary said she was not available. No further effort was made to contact the judge. The judge testified in rebuttal that she did not recall receiving a call; and, due to her feelings about the matter, her secretary would have advised her if the Perrys had called.

The Perrys were contacted by a deputy sheriff. They went to the Sumner County Sheriff's Department to meet with the deputy. Both confessed their guilt.

The trial judge did not believe that the appellants acted spontaneously in the courtroom. He noted, and the evidence shows, that the appellants had attempted to avoid paying the obligation before appearing in court. Alethea C. Perry had told Mrs. Escue that they could not pay the note because she had returned to nursing school. He also noted the "dramatic increase" in perjury in the community; and he held that this was an adequate basis for denying the applications for pretrial diversion. In addition, the trial court noted the seriousness of the offense. He stated that "perjury destroys the very foundation, the very structure of our courts."

## APPLICATION OF THE LAW TO THE FACTS

■ The decision of a district attorney general granting or denying pretrial diversion to an accused is said to be "presumptively correct"; and the decision should not be set aside unless there has been a "patent or gross abuse of prosecutorial discretion." *Pace v. State*, 566 S.W.2d 861, 870 (Tenn. 1978) (cited with approval in *State v. Hammersley*, 650 S.W.2d 352, 356 (Tenn.1983)). Thus, before an appellate court can find that a district attorney general abused his or her discretion in granting or denying pretrial diversion, the record must be void of any substantial evidence to support the decision. *Hammersley*, 650 S.W.2d at 356.

■ In this case, there is substantial evidence contained in the record to support the district attorney general's decision to refuse to enter into a memorandum of understanding with the appellant. Consequently, the trial court properly denied the appellants' petition for a writ of certiorari, as the appellants have failed to establish a "patent or gross abuse of prosecutorial discretion." *Id.*, *Pace*, 566 S.W.2d at 870.

■ The circumstances of the offense is a relevant factor for the district attorney general to consider in determining whether to enter into a pretrial memorandum of understanding. *Hammersley*, 650 S.W.2d at 355. Perjury strikes at the very heart of the judicial system because it "offends the basic principles underlying our judicial system" as well as threatens the vitality of the system. *Wilder v. Wilder*, 863 S.W.2d 707, 713 (Tenn. App.1992). Early in the history of this State, some species of perjury were punishable by death, while other species were punishable by death for a second offense. *Hooper v. State*, 13 Tenn. (5 Yer.) 422, 425 (1826). The seriousness of the offense is predicated upon the possibility that the perjured testimony may result in a miscarriage of justice. A convincing and cunning witness who gives perjured testimony may be deemed more credible than an honest, less convincing witness.

■ Deterrence is also an appropriate factor for the district attorney general to consider when determining whether an accused's application should be granted or denied. *Hammersley*, 650 S.W.2d at 354; *Helms*, 720

S.W.2d at 476; *State v. Holland*, 661 S.W.2d 91, 93 (Tenn.Crim.App.1983); *State v. Watkins*, 607 S.W.2d 486, 489 (Tenn.Crim.App. 1980). In *Hammersley* our Supreme Court said:

> [D]eterrence should be considered in pretrial diversion cases in the same manner as we have approved for consideration in probation cases.
>
> \*    \*    \*    \*    \*    \*
>
> Deterrence *to others* should not be eliminated as a matter of law and in all cases from consideration by the District Attorney General or by the trial judge in deciding whether to grant pretrial diversion; deterrence either of the individual or *of others* is as relevant [in pretrial diversion matters] as in granting or denying probation.

650 S.W.2d at 354 (emphasis added).

While deterrence as a factor has little meaning or effect as to the appellants, the denial of pretrial diversion in this case sends a strong message to individuals who may be called to testify in a court of law. Moreover, it will assist in maintaining the integrity of the judicial system.

The district attorney general and the trial court considered the factors which reflected upon the appellant's amenability to correction. These factors were deemed to outweigh the remaining factors.

DWYER, J., and LAFFERTY, Special Judge, concur.