IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## STATE OF TENNESSEE v. NORMAN JEFFREY PIPKIN

**Interlocutory Appeal from the Circuit Court for Hardeman County**
**No. 6094  Jon Kerry Blackwood, Judge**

**No. W1998-02738-CCA-RM-CD - Decided May 24, 2000**

The defendant, Norman Jeffrey Pipkin, was charged with aggravated assault and hunting without permission. The district attorney general denied his application for pretrial diversion and the trial court affirmed on a petition for certiorari. The defendant filed an interlocutory appeal which came before this court during its March, 1998, session. This court affirmed the judgment of the trial court, and the defendant filed a Rule 11 application. The supreme court granted the appeal, then remanded the case back to this court for reconsideration in light of State v. Curry, 988 S.W.2d 153 (Tenn. 1999).

**Tenn. R. App. P. 9; Judgment of the Trial Court Reversed and Remanded**

WADE, P.J., delivered the opinion of the court, in which SMITH, J., joined. JONES, J., not participating.[1]

Mike Mosier, Jackson, Tennessee, for the appellant, Norman Jeffrey Pipkin.

John Knox Walkup, Attorney General and Reporter, Elizabeth T. Ryan, Assistant Attorney General Nashville, Tennessee, Elizabeth T. Rice, District Attorney General, Jerry Norwood, Assistant District Attorney General, Bolivar, Tennessee, for the appellee, State of Tennessee

### OPINION

The defendant, Norman Jeffrey Pipkin, was denied his request for pretrial diversion from the district attorney general. After a petition for certiorari, the trial court upheld the denial. The defendant filed an interlocutory appeal pursuant to Rule 9, Tennessee Rules of Appellate Procedure, and, on June 4, 1998, this court affirmed the judgment of the trial court. State v. Norman Jeffrey Pipkin, No. 02C01-9710-CC-00375 (Tenn. Crim. App., at Jackson, June 4, 1998). The defendant filed a Rule 11 application. Our supreme court granted the appeal and remanded the cause to this court based upon its decision in State v. Curry, 988 S.W.2d 153 (Tenn. 1999).

---

[1]Honorable Joe B. Jones died May 1, 1998, and did not participate in this opinion. We acknowledge his faithful service to this Court, both as a member of the Court and as its Presiding Judge.

The issue is the same as in the original appeal. That is, whether the trial court erred by ruling that the district attorney did not abuse her discretion in denying the application for pretrial diversion. Because the supreme court in Curry has directed a specific method by which the district attorney general must consider an application for pretrial diversion, the judgment of the trial court must be reversed, the defendant must be granted pretrial diversion, and the cause must be remanded for the establishment of rules and regulations incident to the program.

The pertinent facts are set out in our original opinion:

> The defendant, who had obtained permission to hunt on the property of a friend, either intentionally or unintentionally went onto the nearby property of another landowner without permission. When Joel Porter and a friend, Rob Kalb, confronted the defendant, he attempted to escape. Porter caught him and asked for identification. The defendant refused, later maintaining that the men were armed and hostile toward him in spite of his attempts to explain. Porter left to call the game warden while Kalb stayed to watch the defendant. When the defendant attempted to leave, Kalb followed. What happened thereafter is subject to dispute. The defendant asserted that Kalb then aimed his gun at the defendant. He claimed that after thirty or forty-five minutes, he caught Kalb off-guard and disarmed him. The defendant pointed his shotgun at Kalb's head and ordered him to empty his weapon and relinquish the shells. As he did so, the defendant asked Kalb if he had a family. The defendant claimed that Kalb then threatened him, saying that if he ever saw the defendant again, he would kill him.

> Later in the day, game warden officers went to the defendant's residence to ask him about the incident. Initially, the defendant denied that he had been hunting that morning. Later, he admitted he had been hunting and claimed to the officers that two men had chased him down. The defendant was then charged with aggravated assault and hunting without permission.

> The defendant, thirty-five years old, has been married thirteen years and is the father of two children. He has been employed by Proctor and Gamble for nearly a decade, has no criminal history, and has taken an active role in his community. He coaches youth baseball and softball teams and actively participates in the Optimist Club. The defendant is also an avid sportsman and hunter.

The defendant filed an application for pretrial diversion in May of 1997, which included the following information:

(1)	He is a young man, 35 years of age, and is a resident of Madison County, Tennessee.  He has never been convicted of any criminal offense, and this is his first involvement with the criminal justice system.

(2)	He is, and has been, gainfully employed, and plans to remain employed in the future.  He realizes that the offense with which he is charged is indeed a serious one.

(3)	He would submit that he will not be engaged in the commission of any criminal offense in the future.

(4)	That should the DISTRICT ATTORNEY GENERAL see fit to consider him as a candidate for the pretrial diversion program, the defendant will obey all rules and regulations which are set out for him by his probation officer, with the full realization that should he fail to do so, the prosecution may be reinstituted and he can be convicted of a serious felony offense.

Counsel for the defendant signed the application and the trial judge made an order of reference for an investigation of the defendant by the Department of Correction.  It was determined that the defendant had a high school education, no prior criminal record, and no physical or mental disabilities.  He denied ever having used alcohol or illegal drugs.  At the time of the report, the defendant had been married for 13 years and had two children, ages 8 and 11.  As an employee of Proctor & Gamble for nearly a decade, the defendant reported a salary of $2,400.00 per month.  His assets included a residence, subject to a mortgage in the approximate amount of $20,000.00, two automobiles, and a boat.

In a handwritten document filed with the trial court, the defendant summarized his recollection of the events which led to his arrest.  He stated that he had been turkey hunting on a friend's land when he followed a turkey into some woods where he "did not see any 'no hunting' signs. . . ."  He stated that he walked several hundred yards and came upon a field where he placed a decoy and some netting.  He recalled that about 20 minutes later, "a truck came speeding up at me . . . and "two men jump[ed] out of the truck with guns."  The defendant stated that he feared the two intended to shoot him and so he ran until one of the men said, "Stop."  The defendant explained that he feared he had "stumbled into someone's field of pot" and that the two men used abusive language when they asked who he was and what he was doing there:

I did not feel like he needed to know.  He continued to use [abusive] language, I saw he was pretty young and I felt like he might be on drugs.  He ask[ed] to see my hunting license.  Not knowing if he got my address if he would try to come to my house, I asked him if he was a game warden[.]  [H]e said no and I said then you don't need to

-3-

see my license. He again asked my name and so I made up a name to try to calm him down. . . . I said if I am on your land, it is not intentional. He continued to curse me. . . . He then said I'll tell you what you're going to do, you're going to get your ass in my truck and I'm going to take you to the game warden. I told him I was not getting in his truck. I was still in fear of my life. At that time he told the other man to guard me and if I went anywhere for him to follow me no matter what. He said he was going to get the game warden.

When one of the men (Porter) left, the defendant walked away from his hunting site. The other man (Kalb) followed for about 30 minutes when the defendant asked to be left alone. The defendant stated that the second man was still armed and only five or six feet away. He walked another 30 or 45 minutes before aiming his own gun at the man and directing him to unload his weapon. The defendant took the man's shells and claimed that he gave him directions back to a TVA strip of land:

At that time he told me he would kill me if he ever saw me again. I said I just don't want any trouble and I felt he pushed me to defending myself. . . . I also told him when he got back, he could have my decoy since I took his shells. He went his way and I went mine.

When the game wardens arrived at his residence approximately two hours later, they inquired whether the defendant had, in fact, been hunting on the subject property. According to the defendant, he "first said no but I knew that . . . was not so I then said yes." The defendant acknowledged to the officers at that point that he had aimed his weapon at a man that morning.

The district attorney filed an answer to the defendant's application for pretrial diversion. While acknowledging that she had reviewed the content of the application for pretrial diversion and considered the circumstances of the offense, the report of the Department of Correction, the defendant's denial of criminal responsibility, his claim that he was a victim, and his contradictory statements to officers, the district attorney denied the application. The record establishes that the district attorney also considered the defendant's use of a deadly weapon, the deterrent effect of punishment on criminal activity, the defendant's amenability to correction and whether pretrial diversion would serve the ends of justice for both the defendant and the public. After reviewing "the entire record in this cause," the district attorney provided five reasons for rejecting the application:

(1)     The offenses were not impulsive, but required premeditation, effort and planning.

(2)     There was a sustained intent to violate the law.

(3)     Defendant has failed to accept responsibility for the commission of the offenses charged.

(4) The attitude of law enforcement in this case [is] that diversion should be denied.

(5) Considering the above factors, it appears that pretrial diversion will not serve the ends of justice and the best interest of the public and the Defendant.

The report filed by Officers Keith Mitchell and William Spencer of the TWRA, cited by the district attorney as an important basis for the denial of pretrial diversion, was made a part of the record. After the two officers had been notified that there was a trespasser on the lands of Joel Porter and that Rob Kalb had stayed to follow the suspect while Porter notified authorities, the two officers went to the Porter property:

Rob Kalb started yelling and ran up to Officer Mitchell's truck and said that he had followed the subject north past the power lines and . . . the subject asked Mr. Kalb if he had a family. He then pointed the shotgun at his head and told him that he didn't want to leave him there. He made Mr. Kalb unload his shotgun and [took] all of his ammunition. He told Mr. Kalb to walk south and to not look back at the way he was going.

When located, the defendant admitted to the officers that he had gone to the property when Porter and Kalb had seen his vehicle, but he denied that he had been hunting:

Mr. Pipkin then changed his story and said that he had been hunting when two people came upon him and chased him down. Then one person left to call the game warden and one stayed with him. He said he got tired of the guy following him around and he pulled his gun on him and made him unload his gun. He then told him to walk down the creek to the power lines and not to look back at him. Officer Spencer then advised Mr. Pipkin that he needed to get the Binelli shotgun. Mr. Pipkin said, "Do you have a warrant?" Officer Spencer said that "I don't need a warrant." Mr. Pipkin then went inside and got the gun and brought it back outside the house and gave it to Officer Spencer. He was then transported to the Hardeman County Jail and charged with aggravated assault and hunting without permission. . . . Officer Spencer received a call from Mr. Pipkin's dad that night. He wanted to know who the landowner and other person was and their addresses. He advised that they would fill out warrants on Mr. Kalb and Mr. Porter the next day.

Pretrial diversion authorizes district attorneys to suspend prosecution against a qualified defendant for a period of up to two years. Tenn. Code Ann. § 40-15-105(a)(1)(A). One

who is statutorily eligible for pretrial diversion is not presumptively entitled to the program. Whether a qualified defendant receives a grant of pretrial diversion is discretionary with the district attorney general. State v. Hammersley, 650 S.W.2d 352, 353 (1983); State v. Carr, 861 S.W.2d 850, 855 (Tenn. Crim. App. 1993).

In making the initial determination, the district attorney general must consider (1) the circumstances of the offense; (2) the defendant's criminal record; (3) the defendant's social history; (4) the defendant's physical and mental condition; (5) the deterrent effect of punishment upon other criminal activity; (6) the defendant's amenability to correction; (7) the likelihood that pretrial diversion will "serve the ends of justice" and the best interests of the defendant and the public; and (8) the defendant's "attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility, and attitude of law enforcement." State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (citing State v. Markham, 755 S.W.2d 850, 852-53 (Tenn. Crim. App. 1988)).

A denial of pretrial diversion must be in writing and must include "an enumeration of the evidence that was considered and a discussion of the factors considered and weight afforded each." State v. Pinkham, 955 S.W.2d 956, 960 (Tenn. 1997). There must be "more than an abstract statement in the record that the district attorney general has considered these factors." State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989). The factors considered "must be clearly articulable and stated in the record. . . ." Id. While the defendant has the burden of demonstrating his suitability for diversion, that does not relieve the district attorney from the obligation to examine all relevant factors. Pinkham, 955 S.W.2d at 960.

The response of the district attorney must be in writing. In State v. Brown, 700 S.W.2d 568, 570 (Tenn. Crim. App. 1985), this court provided three reasons for requiring a written response:

First, the statement would compel the prosecutor to think about and justify his denial in terms of the applicable standards. Second, the statement of reasons would define the area of controversy at the evidentiary hearing. Finally, the statement of reasons would restrict the prosecutor to a particular rationale and ensure that the prosecutor would offer no new reasons at the evidentiary hearing.

The district attorney should identify any areas of factual dispute. Brown, 700 S.W.2d at 570. The circumstances of the case and the generalized need for deterrence, when relied upon by the district attorney, "cannot be given controlling weight unless they are 'of such overwhelming significance that they [necessarily] outweigh all other factors.'" Washington, 866 S.W.2d at 951 (emphasis in original) (quoting Markham, 755 S.W.2d at 853). Where there are no "such exceptional circumstances, 'the district attorney general must consider evidence which tends to show that the applicant is amenable to correction [by diversion] and is not likely to commit further criminal acts.'" Id. "The decision of a district attorney general granting or denying pretrial diversion to an accused is said to be 'presumptively correct'; and the decision should not be set aside unless there has been a 'patent or gross abuse of prosecutorial discretion.'" State v. Perry, 882 S.W.2d 357, 360 (Tenn. Crim. App. 1994) (quoting Pace v. State, 566 S.W.2d 861, 870 (Tenn. 1978)).

When an application for pretrial diversion has been denied by the district attorney, the defendant may appeal to the trial court for a writ of certiorari. Tenn. Code Ann. § 40-15-105(b)(3). The trial court may only consider the evidence considered by the district attorney general. State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993). The trial court, after first determining whether the defendant is eligible for diversion, may conduct a hearing to resolve any factual disputes between the state and the defense but may not hear evidence not considered by the district attorney. Pinkham, 955 S.W.2d at 960; State v. Watkins, 607 S.W.2d 486, 488-89 (Tenn. Crim. App. 1980).

In order for the trial court to grant relief to the defendant, the record must show an absence of any substantial evidence to support the denial of pretrial diversion by the district attorney. If the preponderance of the evidence supports the decision of the trial court, the judgment must be affirmed on appeal. Pinkham, 955 S.W.2d at 960; State v. Lutry, 938 S.W.2d 431, 434 (Tenn. Crim. App. 1996).

In State v. Curry, the decision upon which this remand is based, our supreme court observed as follows:

> Although the prosecutor asserts that he had "carefully reviewed the application and the attached letters, the denial does not discuss the defendant's favorable social history, lack of criminal record, and potential for rehabilitation. Moreover, assuming these essential factors were, in fact, considered, there is no explanation as to how much weight they were afforded and no rationale as to why they were outweighed by the other factors in denying diversion.

988 S.W.2d at 158. Our supreme court cautioned that while the circumstances of the offense and the need for deterrence may alone justify denial of diversion, that is so "only if all of the relevant factors have been considered as well." Id. In several cases, this court has ruled that the nature and circumstances of an alleged offense are not only an appropriate factor to be considered upon application for diversion, but also may alone provide a basis for denial. See Carr, 861 S.W.2d 855; State v. Sutton, 668 S.W.2d 678, 680 (Tenn. Crim. App. 1984). It is important, however, to recognize that practically every criminal case is serious, and that only an analysis of all relevant factors, favorable and otherwise, assures proper consideration of an application for pretrial diversion. State v. Herron, 767 S.W.2d 156. In Curry, our supreme court complimented the district attorney who had appropriately denied diversion in Pinkham because he had "extensively discussed the relevant factors, identified the evidence considered, and set forth the weight afforded to each factor as well as the rationale for his conclusion." Curry, 988 S.W.2d at 159. In Curry, our supreme court cautioned that denial should not concentrate "solely upon the circumstances of the offense and, arguably, a veiled consideration of deterrence." Id. Our high court observed as follows:

> There was no apparent consideration given to the defendant's lack of criminal record, favorable social history, and obvious amenability to correction. Moreover, the prosecutor did not articulate or state why

those factors that were considered, i.e., seriousness of the offense and deterrence, necessarily outweigh the other relevant factors. The evidence presented is a close case on the diversion question; however, the failure by the prosecutor to consider and articulate all of the relevant factors constitutes an abuse of discretion. . . . Finally, we also conclude that the Court of Criminal Appeals erred in remanding the case for an evidentiary hearing in order for the prosecutor to "fill in the gaps" and correct any deficiencies in the record. First, the procedure adopted by the Court of Criminal Appeals decreases the importance of the written response and increases the risk that new reasons or considerations will be introduced during the hearing without notice to the defendant. Second, the standards of review governing certiorari proceedings require the trial court to consider only that which has already been considered by the prosecutor.

Id. at 159.

In our view, the decision in Curry clarifies and perhaps extends the degree of analysis required by the district attorney general in consideration of an application for pretrial diversion. Careful consideration must be given to the "defendant's lack of criminal record, favorable social history, and obvious amenability to correction." Id. at 159. Here, the district attorney did not, as required by Curry, "state why the factors that were considered, i.e., seriousness of the offense and deterrence, necessarily outweighed the other relevant factors." Id. In that regard, the facts here are indistinguishable from those in Curry. The district attorney determined that the serious nature of the circumstances, especially the defendant's failure to admit guilt and his failure to show remorse, outweighed all other factors. The authors of several letters[2] which predate the denial of the application for pretrial diversion and which appear in the record, extol the virtues of the defendant. The district attorney did not recite many of the activities that would have reflected favorably on the defendant. The denial of pretrial diversion, while including a general statement that all relevant factors were carefully considered, makes no mention of the several circumstances which might have reflected favorably upon the defendant's application for diversion. Because the opinion in Curry requires that the district attorney must not leave "gaps" in providing the written response to the application for diversion, and because there can be no remand for inquiry into those "gaps," the judgment of the trial court must be reversed and the defendant must be placed in a pretrial diversion program subject to the rules and regulations prescribed by the trial court. Costs are adjudged against the state.

---

[2]The former Sheriff of Madison County, a captain in the Jackson Police Department, coworkers at Proctor & Gamble, and several friends filed letters attesting to the defendant's good character, his participation in youth activities, his work ethic, and his civic involvement.