IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 6, 2017 Session

**STATE OF TENNESSEE v. GUY LEN BIGGS**

**Appeal from the Circuit Court for Henry County**
No. 15497     Donald E. Parish, Judge

_____

**No. W2016-01781-CCA-R3-CD**

_____

The defendant, Guy Len Biggs, pled guilty to aggravated perjury and fabrication of evidence in violation of Tennessee Code Annotated sections 39-16-703 and 39-16-503. For his respective crimes, the trial court imposed concurrent sentences of four and five years in the Tennessee Department of Correction. The trial court ordered the effective five-year sentence to run consecutively to a prior, twelve-year sentence for attempted second degree murder. On appeal, the defendant argues the trial court abused its discretion by ordering his present sentences to run consecutively to his prior sentence. The defendant also vaguely challenges the length and manner of service of his sentences for aggravated perjury and fabrication of evidence. Following our review of the briefs, the record, and the applicable law, we affirm the defendant's four and five-year sentences to be served in confinement, consecutively to the twelve-year sentence for attempted second degree murder.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J. and NORMA MCGEE OGLE, J., joined.

Benjamin S. Dempsey, Huntingdon, Tennessee, for the appellant, Guy Len Biggs.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and Paul Hessing, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In March 2015, while on trial for attempted first degree murder, the defendant, in support of his defense at trial, perjured himself and submitted a fabricated document into

evidence detailing a false military career. Specifically, the defendant argued the State's theory, that he unsuccessfully shot his wife's lover, was impossible because of his military training and expertise. At the close of trial, the jury convicted the defendant of the lesser-included offense of attempted second degree murder. On August 3, 2015, the trial court sentenced the defendant to twelve years' incarceration for his crime.

Subsequently, on November 2, 2015, the defendant was indicted for one count of aggravated perjury and one count of fabricating evidence to which he pled guilty on January 7, 2016. At the sentencing hearing for these convictions, the pre-sentence report was entered into evidence and the defendant's daughter, Karen Biggs, testified on behalf of her father. Ms. Biggs stated the defendant is honest and kind, but also acknowledged the defendant lied during his trial testimony and created a false document to support the same. Ms. Biggs couched the defendant's behavior in the following way: "Yes, I'm sure he has done what he had to do. He was scared and tried to help himself in any way." No other evidence was offered during the sentencing hearing.

Prior to sentencing the defendant, the trial court provided the following procedural and factual history surrounding the defendant's present convictions:

> The [c]ourt has heard the evidence, and arguments of counsel, presented on the matter of sentencing. Before I impose sentence I need to, for purposes of the record, state some items that would allow a reviewing court to understand, looking at this record only, the context in which this crime arises.
>
> [The defendant] was originally charged for [a]ttempted [f]irst [d]egree [m]urder. That case went to trial to a jury. This [c]ourt presided at that trial, which did last multiple days.
>
> The allegations were, and the state's theory, which the jury accredited, and the [c]ourt also accredited that theory, was, to the effect, that [the defendant], in conjunction with his wife, lured, or made arrangements for, the lover of [the defendant's] wife to come to the [defendant and his wife's] home for purposes of [the defendant] shooting, and killing, the lover.
>
> The plan went so far as the gentlemen (sic), who was the victim in the [a]ttempted [m]urder, did come to the home, and came inside the home, and a shot was fired. [The defendant] did not successfully hit the other actor, the victim in that case. [The defendant], however, was not clear, or it

- 2 -

was unknown, whether he did, or he did not, hit him, and [the defendant] staged a shooting of himself.

In other words, it was the State's theory that [the defendant] then turned the gun on himself and shot himself, so as to make it look as though he was the victim, and after investigation by law enforcement, and, in fact, the other gentleman being arrested originally, law enforcement charged [the defendant] with [a]ttempted [m]urder, and exonerated the other actor.

[The defendant] was released on bond, set by the [g]eneral [s]essions [j]udge, and the [g]eneral [s]essions [j]udge imposed some restrictions on [the defendant], while he was on bond. One of those restrictions was that [the defendant] not have contact with his then wife.

There was a motion filed by the State to revoke the bond, which this [c]ourt heard. This [c]ourt was convinced that [the defendant] had, in fact, violated that bond condition, and the [c]ourt revoked [the defendant's] bond, that sent him to jail where he remained through the time of the trial on the [a]ttempted [m]urder case. And, in fact, he's (sic) remains there now, the court eventually having sentenced him on the conviction for [a]ttempted [s]econd [d]egree [m]urder to a term of twelve (12) years incarcerations (sic).

Now during the trial, the jury trial, for the first criminal case, that is the [a]ttempted [m]urder [c]ase, [the defendant] testified that he had a remarkable, shall we say, military record, as the Attorney General has argued here in the [s]entencing [h]earing today, including that he had recovered the body of his colonel, that he had been medically discharged for wounds, which he received. He had been highly decorated, as a matter of fact, that he was a Silver Star winner. Had it been true, it was a record of which he would have taken great pride in.

 Not only that, [the defendant], at trial, produced, and introduced into evidence, a fabricated document that I believe was a DD214 form, and I'm recalling all of these things from memory, showing that [the defendant] had, in fact, been discharged from the military with the honors that I have just referred to.

Before going to trial, [the defendant] represented to the [c]ourt, through counsel, that he needed to go to his home and retrieve some items that would be imperative that he have before his trial. The [c]ourt, in a very

unusual situation, allowed him to do that in the company of security, physically leave the jail, go to his home, and make a retrieval, on the representation that it would be substantial evidence, and he was [the] only one who could find it. He was the only one that knew where it was, so to speak.

Where the [c]ourt cannot be absolutely sure that [the defendant] went there to retrieve this document, false document, that he had created, it is logical, none the less, that that's what happened. So that's the background, or context, in which the present case arose.

[The defendant] testified he produced this document, because the [c]ourt could only see that it looked proper on it's (sic) face at the time it came into evidence. As the State argues, it may have had an influence on this jury. That's a matter that cannot be fully determined now, but the State argues that it probably did. That's at least a reasonable argument to make.

So now [the defendant] is before the [c]ourt, in the instance case, for having committed the offense of [a]ggravated [p]erjury, that is, his testimony which was physically given during trial, and for also the offense of [f]abricating [d]ocumentary [e]vidence, which means the production of the fake DD214, which had to take place at sometime other than his testimony.

In other words, those are two (2), at least two (2), acts that took place at least on difference (sic) days and at different times. They are only connected by the fact that it was during his [a]ggravated [p]erjury testimony that he introduced into evidence the document that had been earlier fabricated, and that's the factual context of which this situation now arises.

At the close of the sentencing hearing, the trial court imposed a four-year sentence for the aggravated perjury conviction and a five-year sentence for the fabricating evidence conviction. The trial court ordered the sentences to run concurrently to one another, but consecutively to the twelve-year sentence the defendant received for attempted second degree murder. This appeal followed.

## ANALYSIS

On appeal, the defendant claims the trial court erred in running the effective five-year sentence for his present convictions consecutively to his twelve-year sentence for

attempted second degree murder. The defendant also challenges the length of the sentences imposed for his convictions of aggravated perjury and fabricating evidence, and asserts he was eligible for alternative sentencing as to each conviction. In response, the State generally asserts the defendant has waived his appellate arguments, but further claims the trial court did not err in sentencing the defendant. Upon our review of the record, we agree with the State.

Initially, we note, the defendant has failed to include in the record on appeal the transcript of the guilty plea hearing for his present convictions. "Generally, this [C]ourt is precluded from addressing an issue on appeal when the record fails to include relevant documents." *State v. Robinson*, 73 S.W.3d 136, 154 (Tenn. Crim. App. 2001); *see* Tenn. R. App. P. 24. Furthermore, the fact that the record is incomplete "requires us to presume that had all of the evidence considered by the trial court been included in the record on appeal, it would have supported the imposition of [the trial court's sentence]." *State v. Keen*, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999) (citing *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991) ("stating that when necessary parts of the record are missing on appeal, this Court must presume that the trial court's decision was correct"). Regardless, we will address the defendant's sentencing challenges in turn.

Primarily, the defendant asserts it was error for the trial court to run his sentences for aggravated perjury and fabricating evidence consecutively to his prior, twelve-year sentence for attempted second degree murder. We, however, disagree. This Court reviews consecutive sentences imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W. 3d 682, 707 (Tenn. 2012); *State v. Pollard*, 432 S.W.3d 851, 859-60 (Tenn. 2013). The party appealing a sentence bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

Tennessee Code Annotated section 40-35-115 "creates several limited classifications for the imposition of consecutive sentences." *State v. Moore*, 942 S.W.2d 570, 571 (Tenn. Crim. App. 1996). A trial court "may order sentences to run consecutively if it finds by a preponderance of the evidence that one or more of the statutory criteria exists." *State v. Black*, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Pursuant to statute, consecutive sentencing is warranted when "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). In considering a defendant's dangerous offender status, a trial court can rely on the defendant's prior criminal history. *See State v. Crawford*, No. E2012-00001-CCA-R3-CD, 2013 WL 4459009, at *32 (Tenn. Crim. App. Aug. 19, 2013) (relying on three "prior violent felony convictions" and reciting "the facts leading to those convictions" in finding the defendant to be a dangerous offender). In imposing

consecutive sentences based upon a dangerous offender status, it is necessary that "the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995); *see also State v. Lane*, 3 S.W.3d 456, 461 (Tenn.1999) (stating that the *Wilkerson* findings that the sentences are necessary to protect the public and reasonably relate to the severity of the offenses apply only to consecutive sentences involving dangerous offenders).

Here, the trial court found the defendant was eligible for consecutive sentencing based upon his status as a "dangerous offender." Tenn. Code Ann. § 40-35-115(b)(4). The record shows the trial court relied on the underlying facts of the defendant's attempted second degree murder conviction in making its dangerous offender determination. *See Crawford*, No. E2012-00001-CCA-R3-CD, 2013 WL 4459009, at *32. The trial court explained its reasoning, as follows:

> With respect to the issue of consecutive, or concurrent, sentencing the [c]ourt finds that [the defendant] is a dangerous offender whose behavior indicates little or no regard for human life, and whose hesitation about committing the crime in which the risk to human life was high is, in fact, present.
>
> . . .
>
> Let me speak to that just a little bit at this time. The first offense, the [a]ttempted [m]urder offense, certainly indicates that [the defendant] is not only capable of, but has, in fact, engaged in behavior that was just likely to cause death, it was intended to cause death, and the jury found that by convicting him of [a]ttempted [s]econd [d]egree [m]urder. He's a dangerous guy.

As evidenced above, in finding the defendant to be a dangerous offender, the trial court considered the facts underlying the defendant's second degree murder conviction. In doing so, the trial court accredited the jury's theory that the defendant "lured" his victim to his home in order to ambush and kill him, and after failing to do so, the defendant attempted to stage the scene of the crime so as to appear he was the victim of the shooting. Based upon these facts, the trial court found the defendant's "behavior indicate[d] little or no regard for human life" and the defendant had "no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). As such, the record supports the trial court's classification of the defendant as a dangerous offender. Tenn. Code Ann. § 40-35-115(b)(4); *Crawford*, No. E2012-00001-

CCA-R3-CD, 2013 WL 4459009, at *32 ("The presence of a single factor is enough to justify the imposition of consecutive sentencing.").

Because the defendant, as a dangerous offender, "falls within the statutory classifications for eligibility to be considered for consecutive sentencing, the only remaining considerations are whether (1) the sentences are necessary in order to protect the public from further misconduct by the defendant and (2) 'the terms are reasonably related to the severity of the offenses.'" *State v. Moore*, 942 S.W.2d 570, 573-74 (Tenn. Crim. App. 1996) (quoting *State v. Wilkerson,* 905 S.W.2d at 938. In considering these factors, the trial court stated:

> The [c]ourt also finds that the circumstances surrounding the commission of all three (3) of these offenses are aggravated, and that confinement for and (sic) extended period of time is necessary to protect society from his unwillingness to lead a productive life, and his resort to criminal activity in furtherance of an anti-social lifestyle, and that the aggregate length of the sentences, which will be imposed reasonably relates to the offense of which he stand[s] convicted.
>
> . . .
>
> The [c]ourt also finds that the circumstances of not only that first offense were aggravated, but the circumstances in this offense that's here for sentencing, and that's what counts the most, of course, they are aggravated, in that this took a great deal of planning. This was not a situation in which [the defendant] just all of a sudden made a miss-statement (sic) and got confused, or he, in the spur of the moment, made a poor judgment to tell an untruth. This took a lot of time to fabricate this evidence.
>
> The DD214, which was fabricated was a good enough fabrication that it got into evidence with the [c]ourt looking at it. And under the circumstances, it's not necessarily an easy thing to get a fabricated document into evidence in a criminal trial, but the [c]ourt allowed it in. [The defendant] put a lot of effort into fabricating that evidence.
>
> It's necessary that society be protected from somebody who has just intentionally set out, not only to commit [m]urder, but then to engage other people in the coverup, the very elaborate coverup, very elaborate scheme to trick a jury, and to trick a judge. It's the very definition of anti-social.

In considering the defendant's behavior, we agree with the trial court's analysis wherein it determined the consecutive sentencing imposed here "reasonably relate[s]" to the severity of the defendant's offenses and serves to protect the public from further criminal conduct by the defendant. *Wilkerson*, 905 S.W.2d at 938; *Lane*, 3 S.W.3d at 461. After plotting to kill his wife's lover, the defendant was arrested and tried. During the trial for the attempted murder offense, the defendant implemented a calculated scheme to defraud the trial court by creating a false military career in order to escape the consequences of his criminal actions. Not only did the defendant perjure himself to this effect during trial, but he also created a fabricated military document to support the same. The trial court noted that the nature and circumstances of the defendant's deceptive conduct were "aggravated," "egregious," and "offensive, not only to the [c]ourt, but offensive to the community." As such, the record supports the trial court's finding that the defendant, a dangerous offender, engaged in actions warranting consecutive sentencing in order to protect the public from further criminal activity of the defendant. Additionally, the imposed consecutive sentencing reasonably related to the severity of the defendant's offense of intentionally trying to defraud the trial court. As such, the trial court did not err in imposing consecutive sentencing as a result of his dangerous offender status and the *Wilkerson* factors. *Id.* The defendant is not entitled to relief.

Relying on its ruling as a whole, the trial court also imposed consecutive sentencing under Rule 32 of the Tennessee Rules of Criminal Procedure "which addresses sentencing where the defendant has prior unserved sentences and also requires mandatory consecutive sentencing in limited instances." *Moore*, 942 S.W.2d at 571. Rule 32 provides:

> If the defendant has additional sentences not yet fully served as the result of convictions in the same court or in other courts of Tennessee and if this fact is made known to the court prior to sentencing, the court shall recite this fact in the judgment setting sentence, and the sentence imposed is deemed to be concurrent with the prior sentence or sentences, unless it affirmatively appears that the new sentence being imposed is to be served consecutively to the prior sentence or sentences. The judgment to make the sentences consecutive or concurrent shall explicitly relate the judge's reasons and is reviewable on appeal.

Tenn. R. Crim. P. 32(c)(2)(A)(i).

In imposing consecutive sentencing, the trial court went "on to note in ordering consecutive sentence here that [the defendant], of course, has this earlier sentence for [a]ttempted [m]urder that is not yet fully served." According to the presentence report, the defendant received a twelve-year sentence for attempted second degree murder on

August 3, 2015. The defendant pled guilty to the present convictions on January 7, 2016, and the trial court sentenced him for the same on May 11, 2016. The record, therefore, makes clear that the twelve-year sentence for attempted second degree murder was in effect prior to the imposition of the sentences at issue here and the trial court noted the same in sentencing the defendant. It is apparent the trial court imposed consecutive sentencing pursuant to Rule 32 relying on its ruling in its entirety. Accordingly, consecutive sentencing was warranted as "the defendant ha[d] additional sentences not yet fully served" at the time of sentencing in this case and the trial court adequately identified its reasons for imposing consecutive sentencing in the record. Tenn. R. Crim. P. 32.

Under these facts and circumstances, we conclude consecutive sentencing was warranted, and the consecutive sentencing imposed by the trial court is consistent with the applicable sentencing principles and guidelines. The consecutive sentencing criteria relied upon by the trial court pursuant to Tennessee Code Annotated section 40-35-115 and Rule 32 of the Tennessee Rules of Criminal Procedure are explicit in the record. Accordingly, the trial court did not abuse its discretion in running the defendant's effective five-year sentence for aggravated perjury and fabricating evidence consecutively to his prior twelve-year sentence for attempted second degree murder. We affirm the trial court's sentence.

Included in the defendant's challenge to the trial court's imposition of consecutive sentencing is one sentence asserting "the trial court erred in not considering [the defendant] for alternative sentencing or minimum sentencing or even for judicial diversion." Procedurally, we note, the defendant's challenge as to the length and manner of service of his sentences fails as he has not provided any argument supporting his assertion that the trial court erred in this regard. Tenn. R. App. P. 27(a)(7)(A) (requiring an argument to set forth: "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on"). As a result, these arguments are waived.

Despite the defendant's apparent waiver, we will briefly address the trial court's imposition of four and five-year terms of confinement for the defendant's aggravated perjury and fabrication of evidence convictions, respectively. Before imposing a sentence upon a defendant, the trial court must first consider these factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) the evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information

provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103.

When the record establishes the sentence imposed by the trial court was within the appropriate range and reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The trial court must state on the record the factors it considered and the reasons for ordering the sentence imposed. Tenn. Code Ann. § 40-35-210(e); *Bise*, 380 S.W.3d at 706. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

Here, the record indicates the trial court sentenced the defendant as a Range I, standard offender for his crimes of aggravated perjury and fabricating evidence. Aggravated perjury is a Class D felony. Tenn. Code Ann. § 39-16-703(c). The potential sentencing range for a Range I offender convicted of a Class D felony is between two and four years. Tenn. Code Ann. § 40-35-112(a)(4). Fabricating evidence is a Class C felony. Tenn. Code Ann. § 39-16-503(a)(2). The potential sentencing range for a Range I offender convicted of a Class C felony is between three and six years. Tenn. Code Ann. § 40-35-112(a)(3). Therefore, the sentences imposed by the trial court fell within the appropriate sentencing ranges for the defendant's aggravated perjury and fabricating evidence convictions.

Further, the record indicates the trial court properly considered the statutory factors required under Tennessee Code Annotated section 40-35-210 prior to sentencing the defendant. Specifically, the trial court reviewed the presentence report, the evidence presented at the sentencing hearing, the arguments of counsel, the nature and characteristics of the criminal conduct involved, the applicable enhancement and mitigating factors, and the defendant's allocution. Regarding the nature of the defendant's crimes, the trial court indicated the defendant's aggravated perjury and fabrication of evidence "took a great deal of planning," and the defendant "put a lot of effort into fabricating that evidence." As noted by the trial court and the State, "[p]erjury strikes at the very heart of the judicial system because it 'offends the basic principles underlying our judicial system' as well as threatens the vitality of the system." *State v. Perry*, 882 S.W.2d 357, 360 (Tenn. Crim. App. 1994) (quoting *Wilder v. Wilder*, 863 S.W.2d 707, 713 (Tenn. App. 1992)). Upon consideration of the statutory criteria, the

trial court found the defendant to be a dangerous offender with a "low" potential for rehabilitation. Based on this finding, the trial court imposed concurrent, within-range sentences of four years for aggravated perjury and five years for fabricating evidence to be served in confinement. Nothing in the record indicates the length of the sentences imposed or the trial court's imposition of service in confinement was improper. The defendant is not entitled to relief.

Affording a presumption of reasonableness to the within-range sentences ordered by the trial court, we conclude the trial court did not abuse its discretion. During the sentencing hearing, the trial court carefully stated the sentencing factors on which it relied on the record. In addition, when imposing consecutive sentences, the trial court only needed to rely on one of the grounds listed in Tennessee Code Annotated section 40-35-115(b), and it did so. The trial court found the defendant to be a dangerous offender. *See* Tenn. Code An. § 40-35-115(b)(4). Because the defendant has not met his burden of establishing his sentences were improper, we affirm the sentences imposed by the trial court. The defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE

- 11 -